*W. A. James, J. S. James,* and *J. R. Hutcheson,* for plaintiffs.
*C. B. McGarity,* for defendants.

---

ABBOTT, tax-receiver, *v.* COMMISSIONERS OF FULTON COUNTY.

1. The act approved August 13, 1924 (Ga. L. 1924, p. 87), which is an act to change from the fee to the salary system in certain counties, etc., is a general and not a special law, and therefore is not in violation of article 1, section 4, paragraph 1, of the constitution of the State of Georgia, which provides that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law."

2. Nor is the act in question unconstitutional on the ground that in certain instances the ordinary of the county will be called upon to fix his own salary. There is no constitutional inhibition that would prevent this, if the legislature by an act duly passed should authorize it. The constitution has given to the legislature the State's power to legislate, and that body may make all laws which it deems proper, unless in conflict with the constitution itself, or with the constitution of the United States, or laws enacted by Congress in pursuance thereof.

3. The act under consideration is not void on the ground that it delegates legislative power in contravention of article 3, section 1, paragraph 1, of the State constitution.

4. Nor is the act unconstitutional on the ground that it violates the provision of article 7, section 6, paragraph 2, of the constitution, which limits the taxing power of counties.

5. Nor is it unconstitutional on the ground that it is violative of the clause of the constitution of Georgia providing uniformity of taxation, as embodied in the Civil Code, § 6553.

42

6. The act in question does not violate the provision of the constitution in regard to uniformity of county offices, nor the equal-protection and due-process clauses of the constitution.

No. 4645. June 24, 1925. Rehearing denied July 18, 1925.

Petition for injunction. Before Judge Humphries. Fulton superior court. November 28, 1924.

*Gillon & Tomlinson,* for plaintiff.

*Charles B. Shelton* and *Ralph H. Pharr,* for defendants.

Beck, P. J. W. H. Abbott, as tax-receiver of Fulton County and as a taxpayer of that county, filed his equitable petition against Edwin F. Johnson and others, commissioners of roads and revenues, and prayed for an injunction against the defendants to prevent their carrying into effect or putting in force in any respect an act of the General Assembly of this State approved August 13, 1924 (Ga. Laws 1924, p. 87), "to change from the fee to the salary system in Georgia," etc. The defendants being called upon to show cause, filed their answer, and the case came on for a hearing. After the hearing at chambers, the court passed an order denying the interlocutory injunction, and the petitioner excepted.

1. The application for injunction in this case is based upon the contention that the act of the legislature referred to above is unconstitutional, null and void. The constitutionality of the act is challenged upon several grounds. The first of these grounds, and the one which is argued most at length and most elaborately by counsel for plaintiff in error, rests upon the contention that the act is violative of article 1, section 4, paragraph 1, of the constitution of the State of Georgia (Civil Code, § 6391), which provides that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." This contention renders it necessary to decide whether the law under consideration is one of a general nature or whether it is a special law. If it is a special law, then it is null and void, because there is already a general law which makes provision for the compensation of the officers specified in this act. In the first section of the act it is provided that it shall apply to all counties in the State of Georgia having by the Federal census of 1920, or which may have by any future census, a population of 200,000 inhabitants or more; that in all counties falling within that descrip-

tion the fee system for compensating the officers named in the act shall be abolished, and the officers thereafter shall be paid salaries instead of fees. The officers included under this provision are the clerk of the superior court, the sheriff, the ordinary, the tax-collector, and the tax-receiver. In the case of *Lorentz* v. *Alexander*, 87 *Ga.* 444 (13 S. E. 632), this court, dealing with the provision of the constitution we now have under consideration, said: "A law to be general under this section of the constitution must operate uniformly, throughout the whole State, upon the subject or class of subjects with which it purposes to deal. The act under consideration deals with the establishment of county courts. In order for it to be general and have uniform operation throughout the State, it must affect each county in the State. If it excepts one, or several, it is not general, and can not have this uniform opera tion in all counties of the State." The act under consideration in that case, and which was held to be a special law, excepted from the provisions of the act certain specified counties and other counties which were described. In that respect it differs from the present act. It may be true that the County of Fulton alone comes within the class of the counties for which provision is made by this law attacked as a special law, but none are excluded from the operation of the act if at any time they may come into the class of counties embraced in the act upon attaining the characteristics that must mark a county falling within the provisions of the act. "Where a law is broad enough to reach every portion of the State and to embrace within its provision every person or thing distinguished by characteristics sufficiently marked and important to make them clearly a class by themselves, it is not a special or local, but a general, law, even though there may be but one member of the class or one place on which it operates." 25 R. C. L. 9, 818.

In the case of *Stewart* v. *Anderson*, 140 *Ga.* 31 (78 S. E. 457), it was said: "The question, therefore, is whether the act under consideration is a general or a special law. Has it uniform operation throughout the State? It does not purport to apply to all counties in the State, but only to such as meet a certain description. The legislature may make classification for purposes of legislation and pass general laws with reference to such classes. They may classify counties. The basis of classification must have

some reasonable relation to the subject-matter of the law, and must furnish a legitimate ground of differentiation. Mere arbitrary discriminations are not permissible under the constitution. If a legitimate classification is made with respect to persons, the law must be applicable to all persons within the class or coming within the class. If the classification is sought to be made with reference to counties, and the basis of classification is legal, the law must apply to all counties within the class, or which may come within the class. The legislature could not constitutionally classify one county by itself. There must be some reasonable basis of classification, so that all which fall within the class may come within the scope of the provisions of the law. Although the act may purport to make a classification of counties for purposes of legislation, yet if the so-called class is so hedged about and restricted that the act applies to only one county, and that other counties coming within the class provided can not also come within the purview of the law, it is in fact a local or special act and not a general one." In that case the court was considering an act passed by the legislature abolishing the fee system of compensation for the offices of solicitor-general, tax-receiver, tax-collector, solicitor of the criminal court, and clerk of the court, in counties having a population of 100,000 or more; and it will be seen that while this court recognized the principle that the legislature could not constitutionally classify one county by itself, and that there must be some reasonable basis of classification, so that all which fall within the class may come within the scope of the provisions of the law, the court held further that "the population of a county bears such a legitimate relation to the amount of work which county officers do, and to the compensation which they receive by way of fees therefor, as to furnish a reasonable basis for a classification relatively to the constitutional requirement of generality." From the case last referred to it clearly appears that though the act under consideration in that case was applicable only to counties which might, as shown by the Federal census of 1910 or any future census, have a population of 100,000, the act would not have been unconstitutional on the ground that it was applicable at the time of its passage to only two or three counties and not to other counties of the State, if it had not contained certain other restrictions and limitations, which "not only excluded counties which might possess the alleged basis of classifica-

tion by some future census, so that the act could not apply to them, but practically restricted its application to Fulton County." And the court further said, in this connection: "When it was declared that the class should consist of all counties having 100,000 inhabitants by the last or any future Federal census, with no other basis of classification than this, in order to be a general law it was necessary that it should be open to let in any county which by any future census might have that population, and to be so framed as not to exclude such a county but to apply to it." And then the court points out, "It [the act under consideration] is not so shaped that this could be done."

In the act under consideration in the *Stewart* case the solicitor-general was put upon a salary basis in such a manner that every other county in the State could not possibly come within the operation of its provisions, and there were also in that act provisions referring to the clerk of the superior court as ex officio the clerk of other courts; and referring to the solicitor of city courts and the solicitor of criminal courts, which were, in effect, restrictions and limitations that would necessarily exclude counties which might have at that time or in the future the required population. But the present act is free from such restrictions and limitations. It applies to any county in the State which now has or may hereafter have a population of 200,000 or more. This court has held in several cases that a classification upon the basis of population is a reasonable and natural classification, where it is adjusted to the purpose or subject-matter of the legislation. *Crovatt* v. *Mason,* 101 *Ga.* 246· (28 S. E. 891); *Bone* v. *State,* 86 *Ga.* 108 (12 S. E. 205); *Thomas* v. *Austin,* 103 *Ga.* 701 (30 S. E. 627); *Futrell* v. *George,* 135 *Ga.* 265, 268 (69 S. E. 182); *Cooper* v. *Rollins,* 152 *Ga.* 588 (110 S. E. 726); *Wright* v. *Hirsch,* 155 *Ga.* 229 (116 S. E. 795). In the case of *Adams Motor Co.* v. *Cler,* 149 *Ga.* 818 (102 S. E. 440), subsection 12 of section 2 of the general tax act of 1918 was attacked as being unconstitutional on the ground that the classification of automobile dealers therein was arbitrary and unreasonable. This law imposed a graduated tax on automobile dealers according to the population of the counties in which they did business. Dealers in a county with a population of between 100,000 and 150,000 were taxed $220 per annum. Dealers in each county with a population exceeding 150,000 were taxed $275 per

annum. There was at that time, and is now, only one county in the State having a population exceeding 150,000; but this court properly held that since the classification was made by the legislature on a reasonable basis, it was immaterial as to how many counties come within any given classification. The court said: "The only requirement is that the fact selected for the classification under which a tax like that in question is imposed shall not be arbitrary, but shall bear a reasonable relation to the tax imposed upon the business." In the case of *Wright* v. *Hirsch,* supra, this court referred to and approved the case of *Adams Motor Company* v. *Cler,* supra, holding that, "In the first instance, it is for the legislature to judge of the reasonableness of the classification; but finally the courts decide for themselves the reasonableness or unreasonableness of the classification. Now by what rule are the courts governed in deciding upon the reasonableness or unreasonableness of such classification? Classification must be based on some reasonable ground. It can not be an arbitrary selection. This is about as accurately as the rule can be stated. The classification must square with the rule of reason." Where an act is general in its terms, as in the present case, and applicable to all counties that come within the class defined, and the classification is reasonable and not arbitrary, it can not be said that the number of counties to which the act applies affects the quality of generality necessary to a general law. We can not look solely, in determining a question like that which we have before us, to the operation of the act at the time of its passage, but we must look to the terms of the act; and if the classification of the counties to which it is applicable at that time is reasonable and not arbitrary, and the class may be enlarged when other counties attain the characteristic of the members of that class, it is not necessarily a special law, though it applies to but one county, while on the other hand an act may be special in its nature, although many counties in the State are included within its provisions. An act applying to counties of 100,000 people might nevertheless be a special law. *Bone* v. *State,* supra.

In the case of *Futrell* v. *George,* supra, it was said: "That is as effective to exempt from the operation of the law certain counties in the State as if their names had been given. An entirely different question from that involved in the instant case would

be presented for decision, if, instead of the arbitrary classification of counties by which it was sought to exempt certain counties from the operation of the act, a reasonable classification had been made, even though the classification, made upon a reasonable basis, should have had the effect of exempting some counties from being effected by the statute." In the case of *Thomas* v. *Austin,* supra, the court said: "The words 'throughout the State,' as used in the constitution, necessarily imply that in order for a law to partake of the nature of generality, it should, by its terms, show that it is capable of being applied in any county in the State. It is not necessary for every county in the State, at the time of the passage of the law, to fall within its operation, but it is necessary that none shall be exempted in such a way that it can never fall within its provisions." "Uniformity does not mean universality. This constitutional provision is complied with when the law operates uniformly upon all persons who are brought within the relations and circumstances provided by it." *Cooper* v. *Rollins,* supra. "An act of the legislature relating to counties of a certain class, general in its terms, and founded upon a proper and legitimate basis of classification, is general, and not special, legislation, though but a single county is embraced within the class affected by the legislation." Givens *v.* Hillsborough County, 46 Fla. 502 (35 So. 88, 110 Am. St. R. 104). Quotations might be made from other decisions rendered by this court and from numerous decisions made by other courts supporting what has been said in the rulings quoted above, but we do not deem it necessary to multiply these quotations of authorities. But see People of New York *v.* Squire, 107 N. Y. 593 (14 N. E. 820, 1 Am. St. R. 893); Van Riper *v.* Parsons, 40 N. J. L. 1, 8; Ladd *v.* Holmes, 40 Oregon, 167 (66 Pac. 714, 91 Am. St. R. 457); West Park Commissioners *v.* McMullen, 134 Ill. 170 (25 N. E. 676, 678, 10 L. R. A. 215). It follows from what we have said above and the authorities which we have quoted that the act under consideration is not void on the ground that it is in conflict with article 1, section 4, paragraph 1, of the constitution of this State.

2. The fact that in certain counties in the State there are no commissioners of roads and revenues is not an impediment to the enforcement of this act. It is argued that for an officer to fix his own salary is contrary to public policy. The public policy

of the State upon the subject-matter of the act under consideration is shown and given form by the act itself. It was competent for the legislature to authorize the ordinary to fix his own salary. The constitution has given to the legislature the State's power to legislate, and that body may make all laws which it deems proper, unless in conflict with the constitution itself or with the constitution of the United States or laws enacted by Congress in pursuance thereof. *Southern Ry. Co.* v. *Melton,* 133 *Ga.* 277 (65 S. E. 665).

3. In section 3 of the act under consideration it is enacted that in all counties falling within the provisions of the act the commissioners of roads and revenues, if there be such, or the ordinary or other county authorities having charge of the roads and revenues of the county, shall fix the salaries of the clerk of the superior court, the sheriff, the ordinary, the tax-collector and the tax-receiver; and in section 4 it is provided that the county commissioners (or other authority having charge of the county's roads and revenues) "shall set apart for expenses such funds as they may decide to be proper for each officer." The plaintiff contends that these provisions of the act quoted from sections 3 and 4 have the effect of delegating legislative power to the county officers who are clothed with the authority to fix salaries, and therefore that the act is in conflict with that provision in our State constitution which declares that "The legislative power of the State shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives." We do not think that the conferring of the power to determine the allowance of the salaries of the officers referred to and to set apart such funds as they may decide may be proper for each officer is the delegation of a legislative power. The county authorities, under that part of the act giving this power, will not exercise the powers of the legislature, but will perform an administrative function, though it may have in it perhaps some of the qualities of a quasi judicial or a quasi legislative act. The legislature delegates to the Public Service Commission the power to fix rates and make regulations for railroads. "The power to determine what are just and reasonable rates and charges is vested exclusively in said commission; and the commissioners shall make reasonable and just rates of freight and passenger tariffs." Civil Code, § 2630. It will be observed that power as nearly resembling legislative power or judicial authority is

here conferred upon this administrative board. And in the case of *Georgia Railroad* v. *Smith,* 70 *Ga.* 694, the Georgia Railroad and Banking Company filed its equitable petition, in which it denied the power of the railroad commission of the State to regulate freight and passenger tariffs over its road. This power was denied upon the grounds, among others, (1) because, by article 4, section 2, paragraph 1, of the constitution of Georgia, the duty is imposed on the General Assembly to regulate freight and passenger tariffs; and (2) because the act of October 14, 1879, is unconstitutional and void, as being an attempt to delegate legislative powers to said railroad commission. It was insisted in that case that the constitution of 1877 conferred upon the legislature the power and authority of regulating railroad freight and passenger tariffs, preventing unjust discrimination and requiring reasonable and just rates of freight and passenger tariffs; and it was insisted, that, this power having been conferred upon the legislature, the delegation of the power to the railroad commission could not be constitutionally done, upon the ground that it was an attempt to delegate legislative powers to that commission. In the discussion of the question the court said: "The object of the constitutional provision and the legislative enactment was to give proper protection to the citizen against unjust rates for the transportation of freights and passengers over the railroads of the State, and to prevent unjust discriminations, even though the rates might be just. It was not expected that the legislature should do more than pass laws to accomplish the ends in view. When this was done, its duty had been discharged. All laws are carried into execution by means of officers appointed for that purpose; some with more, others with less; but all must be clothed with power sufficient for the effectual execution of the law to be enforced. Legislative grants of power to the officers of the law to make rules and regulations which are to have the force and effect of laws, are by no means uncommon in the history of our legislation. I need only mention the power given to the judges of the Supreme and superior courts of this State to establish rules which, if not in conflict with the constitution of the United States, of this State, or the laws thereof, are binding and must be obeyed. And it has never been claimed that they were unconstitutional because they had

not been passed by the legislature and read three times, and on three separate days, in each house of the General Assembly."

The precise question which was raised as to the constitutionality of the act in the instant case is, in the *Smith* case, supra, broadly discussed, and the range of the discussion is such as to cover the question which we have before us now. Numerous other instances might be mentioned of the conferring of powers by the legislature which are quasi judicial or quasi legislative in their character, but which this court has held could be constitutionally conferred upon administrative bodies. In the case of *Zuber* v. *So. Ry. Co., 9 Ga. App.* 539 (71 S. E. 937), it was said: "The constitution makes the General Assembly the legislative body of the State, and it can not delegate its general legislative powers. Nevertheless it may confer upon administrative bodies quasi-legislative functions which it itself might perform, but could not so adequately perform directly as it could by delegating them." See also *Southern Ry. Co.* v. *Melton,* supra. In view of the discussion of this question in the cases referred to and the cases there cited, no elaborate discussion of this particular question is here required, nor would it be profitable.

4. The plaintiff contends further that the act under consideration violates the provisions of article 7, section 6, paragraph 2, of the constitution of Georgia (Civil Code, § 6562), which is as follows: "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes [      ] (a); to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts; to support paupers and pay debts heretofore existing; to pay the county police, and to provide for necessary sanitation." To agree with this contention of plaintiff we must assume that under the provision of the law which is here challenged as violating the provisions of the paragraph of the State constitution just quoted it will be necessary for the counties affected to levy a tax for the purpose of paying the salaries of the county officers who are to receive salaries fixed under the act. No tax was levied for the purpose of paying these officers for their services when they were operating under the fee system. The constitution does not anywhere within its limits expressly provide for the

compensation, or for any compensation whatever, to be paid to the tax-collector and tax-receiver; nor is any mention made in the above section of the constitution of the method by which the funds for the purpose of compensating the last-named officers shall be raised, but they have been receiving compensation out of taxes levied by the counties up to this time. But the constitution does declare that the legislature may delegate to counties the power to tax for certain purposes; and it would seem that where the constitution authorizes the legislature to delegate to counties the power to tax, there is necessarily implied in such delegation the further power to provide the machinery for the levy and collection of the taxes, and that the authority to tax for the purpose of paying their salaries or fees from the tax money would follow from necessary implication. It appears from the statement of facts in the case of *Mayor &c. of Waycross* v. *Board of Education,* 87 *Ga.* 22 (13 S. E. 133), that an act was passed October 22, 1887, to establish a system of public schools for the town of Waycross. It was amended December 26, 1888. Under the law as amended, the mayor and council of said town were authorized and required to levy an ad valorem tax of one fourth of one per cent., and the sum so raised was to be used only for the purpose of establishing and maintaining public schools in and for said town. The last-recited act also provided that it should be the duty of the treasurer of said town to recover from the mayor and council all the money received by them by taxation for school purposes, and pay the same out only upon the order of the board of education. The charter of the town of Waycross authorized the town authorities to appoint a tax-collector for the town, prescribe his duties, and regulate his salary or pay. In pursuance of this authority, the mayor and council appointed a tax-collector, and provided that he should receive as compensation for his services ten per cent. of all the taxes collected by him. It appears that this collector collected the sum of $1735.30, and paid over the same to the school authorities, less his commissions of $173.53. The board of education, alleging that said collector had no legal right to retain this sum out of the school fund, demanded the same from the mayor and council, who refused to pay or cause the same to be paid to said board. Whereupon the board of education sought by mandamus to compel the town authorities to have this money paid

to them for school purposes. The judge below granted a mandamus absolute, and his decision was appealed to this court for review; and in passing upon the assignment of error, this court ruled: "The sole question made is, were the mayor and council authorized by law to apply any portion of the sum collected for school purposes to the payment of the expense of its collection? As a general proposition, it would seem just and equitable that any fund collected by taxation for a specific purpose should bear the legitimate and necessary expense of such collection, and it would follow inevitably that this school fund should be reduced by the amount of such expense, unless the law on the subject provides otherwise. We are of the opinion that this law should not be so strictly construed as to prevent this fund from being so reduced." And in the course of the decision several outside authorities laying down in substance the same rule are quoted approvingly.

But if the foregoing reply to the last stated contention as to the unconstitutionality of the act in question is not satisfactory, there is a further answer, and that is that we can not assume that the salaries provided for the officers named in the act will be paid out of moneys raised by taxation. The counties are not entirely dependent upon taxation for revenue. It appears from the case of *Wall* v. *Morris,* 149 *Ga.* 632 (101 S. E. 683), that an act approved August 18, 1918 (Ga. L. 1918, p. 369), fixing the salary of the solicitor-general of the Cordele Circuit, and abolishing the fee system existing in that judicial circuit at the time of the passage of the act, was attacked upon the ground, among others, that it violated that section of the constitution which we have quoted in full above (Civil Code, § 6562) ; and in passing upon the question as to the constitutionality of the act criticised upon this ground, this court said: "It must not be left out of view that counties are not wholly dependent upon taxation for revenue. See Civil Code, § 529. The very act under attack diverts to the county treasuries of the judicial circuits the fees and emoluments accruing to the office of the solicitor-general of the circuit; and it is a fair presumption that these fees will be sufficient, or more than sufficient, to pay the salary of the solicitor-general prescribed in lieu of the fees abolished in his circuit. The presumption is not without a basis of fact. In 1912 the General Assembly passed an act requiring all State-house officers, officers and appointees of any department of

State, and county officers who received fees and compensation other than salaries, to keep a daily account of such fees and compensation and to make sworn itemized statements quarterly to the comptroller-general of the State, and further requiring the comptroller-general to preserve and tabulate said quarterly statements for the information of the General Assembly at the next session thereof. This act was approved August 17, 1912. Acts 1912, p. 109. This act expressly enumerated solicitors-general, solicitors of city and county courts, and judges of city and county courts. It is fair to assume that this act was in answer to the demand of the people. It was generally believed that certain officers of the State and counties were receiving fees in excess of reasonable compensation for services rendered, and the fee system itself was under disfavor. Aside from these considerations, the salary of the solicitor-general, prescribed in lieu of the fees abolished in any particular judicial circuit, is a part of the 'expenses of courts,' within the meaning of article 7, section 6, paragraph 2, of the constitution." And we know that there are fines, forfeitures, and other moneys which accrue to the county without regard to taxation. ·

5. The further contention is made that the salary law violates article 7, section 2, paragraph 1, of the State constitution (Civil Code, § 6553), which reads as follows: "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws. The General Assembly may, however, impose a tax upon such domestic animals as, from their nature and habits, are destructive of other property;" for the reason that the State tax will be collected in the county without cost to the State, thereby increasing the amount of revenue received by the State from such county by the amount of the fees for collection, which under the act will be turned into the State treasury. This, it is claimed, will result in a greater rate of tax in those counties affected by the act, since the State returns to the officers collecting the State taxes in counties not affected by the act a certain per cent. of the amount collected as compensation for collecting the same. We do not think there is any merit in this contention. It has been said that constitutional provisions declaring that taxes shall be uniform apply only to their levy and assessment, and not to the expenditure

or distribution of the money raised by the tax.    37 Cyc. 746. "Const. art. 10, § 1, requiring uniformity and equality in the rate of assessment and taxation of property within the taxing district or locality in which a particular tax is levied, applies only to assessments and taxation, and does not control the expenditure of money arising out of any assessment or taxation of property." Kerr v. Perry School, 162 Ind. 310 (70 N. E. 246). "The provisions of the constitution requiring taxes to be uniform apply to the levying and payment of taxes, and not to the distribution of the revenue arising therefrom." Holton v. Board of Commissioners, 93 N. C. 405. And other courts have held likewise. This rule may not be universally true; it may be that under certain circumstances expenditures or distributions of the money raised by taxation might be made which would not square with this provision of the constitution. Yet it is generally true; otherwise the State of Georgia would have to spend in each county only the tax collected from that county. And to give the provision of the constitution the application it is sought to give it here would violently interfere with the State's method of distributing money for schools, and for the payment of pensions, which has been pursued without question for many years. But besides this, if the county alone has to pay the compensation for the services of a tax-collector or tax-receiver out of its own money, it may be regarded as payment of salary to such officer for his services to the county, and if he had additional services to perform for the State without further compensation than the salary which the county pays him, he takes the office of collector or receiver with that burden, and can not complain.

6. We will not discuss the remaining objections to the salary act, which are, that it is unconstitutional because violative of the section of the constitution in regard to uniformity in county offices; and that it violates the constitutional provision for the equal protection of law and due process of law. We do not think these contentions are meritorious, and are of the opinion that the law should be upheld against the attacks which have been made, and which have been argued thoroughly and cogently in the briefs filed by counsel for both parties.

*Judgment affirmed. All the Justices concur, except Gilbert, J., absent for providential cause, and Russell, C. J., dissenting from the ruling in the first headnote.*