MOSELEY, ordinary, *v.* GARRETT, solicitor-general.

No. 11175. JULY 10, 1936. ADHERED TO ON REHEARING, JULY 27, 1936.

*Louis L. Brown Jr.,* for plaintiff in error.

*George B. Culpepper Jr., James C. Estes,* and *Walter DeFore,* contra.

HUTCHESON, Justice. The solicitor-general of the Macon Judicial Circuit brought a petition for mandamus to require the ordinary of Peach County, who was in charge of the fiscal affairs of

the county, to draw his order upon the county treasurer to pay the balance alleged to be due the solicitor-general for salary for the years 1932 and 1934, alleging substantially the following facts: By an act approved August 9, 1922 (Ga. Laws 1922, p. 309), the fee system was abolished in the Macon Circuit, and a salary fixed for the solicitor-general. The act of 1922 did not prescribe a stated salary to be apportioned among the various counties in the circuit, but specified the amount to be paid by each county. After the creation of Peach County by an act approved August 18, 1925 (Ga. Laws 1925, p. 521), the General Assembly provided that Peach County should pay to the solicitor-general a salary of $1,800 per annum, beginning as of January 1, 1925, which was regularly done until January 1, 1932. By an act approved August 13, 1931 (Ga. Laws 1931, p. 629), it was provided that Peach County should pay the solicitor-general a salary of $1,200 per annum, beginning January 1, 1932. This act further provided that for each year after 1932 the salary of the solicitor-general should be fixed by the grand jury before January 1 of the succeeding year, and approved by the ordinary of Peach County; but that if the ordinary failed to approve the salary, or if any portion of the act of 1931 should be held unconstitutional, the salary should be $1,200 per annum. In 1933 the grand jury recommended that the salary of the solicitor-general for the year 1934 be $900. This recommendation was approved by the ordinary. The plaintiff was elected solicitor-general in 1928, for a term of office ending December 31, 1932. The act of 1931 in so far as it prescribes a salary of $1,200 for 1932 is alleged to be unconstitutional, because the plaintiff was then in commission serving a term which would not expire until December 31, 1932. So much of the act of 1931 as authorizes the grand jury and the ordinary to fix the plaintiff's salary for years subsequent to 1932 is attacked as unconstitutional on the ground that it delegates legislative power to the grand jury and ordinary. It is accordingly alleged that the county is due to the plaintiff a balance of $600 salary for 1932, and a balance of $300 salary for 1934. General and special demurrers were presented by the defendant, and were overruled. It was alleged by the answer that there were no funds in the county treasury to pay the salary; that the action was barred by laches, and that the plaintiff was due to the county a balance of a stated amount on account of overpay-

ment of salary for the year 1925; that the act approved August 18, 1925, fixed a salary of $1,800, beginning as of January 1, 1925, and was therefore retroactive; and that the plaintiff should account for the salary collected at the rate of $1,800 per year for the period antedating August 18, 1925. The court sustained a demurrer to the answer of the defendant, and entered an order making the mandamus absolute, requiring the defendant to draw his orders on the county treasurer for the balance of $600 salary for the plaintiff for 1932, and the balance of $300 salary for 1934.

■ In so far as the petition seeks to recover salary alleged to be due for the year 1932, it proceeds upon the theory that the General Assembly was without power to change the salary of the plaintiff during his term of office. Art. 6, sec. 13, par. 1, of the constitution (Code, § 2-4001) fixes the salaries to be paid from the State treasury to the Justices of the Supreme Court, the Judges of the Court of Appeals, the judges of the superior courts, the attorney-general, and the solicitors-general. It also makes provision for supplementing the salaries of judges in the various circuits. The next paragraph (§ 2-4002), which is alleged to be violated by the act of 1931, provides that: "The General Assembly may at any time, by a two-thirds vote of each branch, prescribe other and different salaries for any, or all, of the above officers, but no such change shall affect the officers then in commission; Provided, however, that the General Assembly shall have power, at any time, by a majority vote of each branch, to abolish the fees at present accruing to the office of solicitor-general in any particular judicial circuit, and in lieu thereof to prescribe a salary for such office, in addition to the salary prescribed in paragraph one of this section, and without regard to the uniformity of such salaries in the various circuits; and shall have the further power to determine what disposition shall be made of the fines, forfeitures, and fees accruing to the office of solicitor-general in any judicial circuit where the fees are abolished." It is alleged that the act of 1931 violates this paragraph of the constitution, because the plaintiff was in commission at the time of the passage of the act. The question to be determined therefore is whether the limitation that "no such change shall affect the officers then in commission," as contained in the first clause of this paragraph, applies to a salary prescribed by the General Assembly for the solicitor-general, to be paid him in lieu

of the fees which accrued to his office before the ratification of the amendment of 1916. As an aid to construction, it should be noted that the proviso vesting in the General Assembly authority to abolish the fee system in any judicial circuit, and prescribe a salary for the solicitor-general in lieu of fees, was not in the original constitution of 1877, but was added by amendment proposed and ratified in 1916. Thus the amendment, which is the only constitutional provision on the subject of the compensation to be paid the solicitor-general in lieu of fees, if free from ambiguity when considered in the light of the other provisions of the constitution, should be given controlling effect. In *Wall* v. *Morris,* 149 *Ga.* 632, 636 (101 S. E. 683), it was said: "The salary, which the amendment authorizes the General Assembly to prescribe in lieu of fees, is not a mere 'increase' of the salary provided from the treasury of the State; it is, in express words, 'in addition thereto'; it is a *new* and different salary. A two-thirds vote of each branch of the General Assembly is required, under the constitution of 1877, to provide *'another* or different' salary for solicitors-general; and the salary thus provided must be uniform. A majority of each house of the General Assembly may abolish the fees pertaining to the office of the solicitor-general in any judicial circuit, and may prescribe in lieu thereof a salary in addition to the salary of $250 which is payable out of the treasury of the State." (Italics ours.) See also *Lang* v. *Sapp,* 150 *Ga.* 96 (102 S. E. 867).

The construction thus given to the constitutional amendment by this court definitely places the salaries which accrue to solicitors-general by virtue of legislative enactments in lieu of fees prescribed by law in an entirely different class from the constitutional salaries paid directly from the State treasury. In prescribing such a salary in lieu of fees, the General Assembly does not prescribe another and different salary in lieu of the salary fixed by the first paragraph of this section of the constitution for the solicitors-general. Each of the acts now under consideration provides that the constitutional salary of $250, which accrues to each solicitor-general under the first paragraph of this section, shall remain unaffected. Therefore it seems clear that the General Assembly, in abolishing the fee system and prescribing a salary in lieu of fees, does not prescribe a salary to take the place of the constitutional salary of $250, but does prescribe a salary which shall be paid to

the solicitor-general in addition to the constitutional salary. This being true, the plain language of the proviso permits the General Assembly, at any time, to abolish the fee system and prescribe a salary in lieu of fees. There is nothing in the amendment of 1916 which could be construed to limit the power of the General Assembly to prescribe salaries for solicitors-general, or to prevent such a statute from affecting the solicitors-general then in commission. Indeed, the construction here placed upon the amendment of 1916 seems to have been acquiesced in by the parties to the instant case, since it appears that the plaintiff accepted for the year 1925 an increase in his salary over that prescribed by the previous act of 1922, although he was then serving a term of office which did not expire until December 31, 1928. It also appears that the plaintiff acquiesced in the act of 1922, which abolished the fee system and immediately put the office on a salary basis, although he was then in commission serving a term of office which did not expire until December 31, 1924. The constitutional amendment of 1916, in plain and unambiguous language, authorizes the General Assembly to abolish the fee system in any circuit and prescribe a salary for the solicitor-general. It is expressly provided that this may be done at any time, by a majority vote of both houses. Since there is nothing in the amendment which limits its operation with respect to officers then in commission, or impairs the power of the General Assembly to change a salary once prescribed, the amendment must be construed according to its evident purpose to place the matter of prescribing the compensation of the solicitor-general to be paid in lieu of fees within the plenary control of the General Assembly. Any other interpretation would, we think, do violence to the plain language of the amendment. For many years before 1916 all solicitors-general were compensated by fees. Certainly it could not be contended that the General Assembly would not be authorized to change the fees of the solicitors-general, so as to affect officers then in commission. A public office is not property, but is a public trust. *Gray* v. *McLendon,* 134 *Ga.* 224 (67 S. E. 859). A public officer has no vested right in the compensation prescribed for the office until he earns it; and in the absence of a constitutional limitation the salaries of public officers may be changed at the will of the lawmaking body. Accordingly, the act of 1931 was not unconstitutional in so far as it changed the salary of the plain-

tiff for the year 1932. The court erred in holding to the contrary. Nothing here ruled is in conflict with *Culberson* v. *Watkins,* 156 *Ga.* 185 (119 S. E. 319), where it was held that the judges of the superior courts of Fulton County could not change the salary of the judge of the juvenile court of that county, after they had once exercised the jurisdiction conferred upon them by statute to appoint a judge and "fix" his salary. In that case the judges were exercising a special function authorized by statute, and within the limitations imposed by the law. Here the General Assembly exercised the power expressly conferred upon it by the constitution to "at any time" prescribe the salary of the solicitor-general.

■ The constitution vests the legislative power of the State in the General Assembly (Code, § 2-1201), which is empowered to "make all laws and ordinances consistent with this constitution, and not repugnant to the constitution of the United States, which they shall deem necessary and proper for the welfare of the State." § 2-1822. While the General Assembly may enact general laws relating to subject-matters within its jurisdiction, and authorize administrative officers or bodies, in the course of administering such statutes, to perform functions quasi-legislative in character (*Abbott* v. *Commissioners,* 160 *Ga.* 657, 664, 129 S. E. 38), those functions which are essentially legislative must be performed by the legislative body, and may not be delegated to executive or ministerial officers. *Southern Ry. Co.* v. *Melton,* 133 *Ga.* 277 (65 S. E. 665); *Zuber* v. *Southern Ry. Co.,* 9 *Ga. App.* 539 (71 S. E. 937). The constitutional amendment of 1916, relating to the compensation of solicitors-general, expressly authorizes the General Assembly to at any time "prescribe" a salary for any solicitor-general in lieu of fees. The authority thus conferred with respect to the compensation of a constitutional officer of the State is essentially legislative in character. The salary fixed by the grand jury and the ordinary, in the exercise of the uncontrolled and unguided discretion given them by the act of 1931, could not have been "prescribed" by the General Assembly within the meaning of the constitutional amendment of 1916. *Abbott* v. *Commissioners,* supra, related to a statute providing a method for fixing compensation of county officers by the officer or officers in charge of the fiscal affairs of the county; whereas the present case involves a statute providing a method for fixing the compensation of a State officer by a lesser governmental

unit of the State. While it may be contended that the compensation to be fixed by the grand jury with the approval of the ordinary is in payment of services rendered in the county in lieu of the fees which would have been received for such services, yet, even so, such services are primarily services rendered in behalf of and for the State in prosecuting violators of the laws of the State, and not in behalf of the county. So we conclude that so much of the act of 1931 as empowers the grand jury and the ordinary to fix the salary of the solicitor-general violates the amendment of 1916, and art. 3, sec. 1, par. 1, of the constitution, and is void. Since the act so expressly provides in the event of the contingency found to exist, it follows that the solicitor-general was entitled to $1,200 for 1932 and each succeeding year.

■ It is contended by the ordinary that the various acts relating to the salary of the solicitor-general are violative of art. 7, sec. 6, par. 2, of the constitution (Code, § 2-5402), which limits the purposes for which the power of taxation may be delegated by the General. Assembly to the counties. This contention is settled by the ruling in *Wall* v. *Morris,* supra, where the question was raised and directly determined adversely to the contention of the ordinary.

■ The contention of the ordinary that the plaintiff should account for an alleged excess of salary paid him in 1925 is without merit. Peach County was created by a constitutional amendment ratified at the general election in 1924. The obvious purpose of the act of 1925 in providing that the salary of the solicitor-general should be $1,800 per annum from January 1, 1925, was to compensate him for services already rendered during that year. Consequently it can not be said that the statute was retroactive. Moreover, any claim of the county for such alleged overpayment was plainly barred by the statute of limitations.

■ Inasmuch as the petition merely sought to compel the ordinary to perform the ministerial duty of drawing his warrant on the treasurer for the salary due to the plaintiff, and to compel the levy of a tax for the purpose of providing funds for the payment of said warrants if funds are not available, neither the county nor the county treasurer was a necessary party to the cause. The head-notes require no further elaboration. The court properly required the ordinary to issue an order for the payment of the balance due the plaintiff as salary for 1934; but it was error to require the

818

issuing of an order for the payment of the balance alleged due for 1932.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Russell, C. J., who dissents.*

*Judgment adhered to on rehearing. All the Justices concur, except Russell, C. J., dissenting, and Gilbert, J., absent.*