FEAGIN *v.* FREENEY, treasurer.

No. 13788. SEPTEMBER 12, 1941. REHEARING DENIED OCTOBER 14, 1941.

*Harry S. Strozier, E. F. Taylor,* and *R. D. Feagin,* for plaintiff. *Ellsworth Hall Jr.,* for defendant.

ATKINSON, Presiding Justice. This record presents for decision one question to wit, whether the legislature can constitutionally delegate to the Board of Commissioners of Bibb County power to fix the salary of the judge of the municipal court of Macon. Originally the constitution of this State contained the following provision: "There shall be in each militia district one justice of the peace," etc. Code, § 2-3501. In 1912 the General Assembly submitted a proposed constitutional amendment, which was duly ratified by the people, authorizing creation of municipal courts in certain counties. In pursuance of this amendment the General Assembly created the municipal court of Macon (Ga. L. 1913, p. 252), and provided a designated salary for the judge. This act was sev-

eral times amended. The last act that dealt with his salary (Ga. L. 1933, p. 346) authorized the Board of Commissioners of the County of Bibb to annually fix the salaries of all officers of the municipal court of Macon, including the judge. It is insisted that the act last cited is violative (a) of article 6, section 7, paragraph 1, of the constitution of Georgia (Code, § 2-3501), authorizing the General Assembly to abolish justices' courts and establish in lieu thereof such new courts as it may, in its discretion, deem necessary, because the power to fix the salary of the judge of said court is necessarily and inherently a part of the power to establish the court and can not be delegated, and because no court could be established without providing a judge and fixing his compensation, and because the salary is a part of his office, and the power to fix, change, or modify the salary while the judge is in power is to control the office, which only the legislature can exercise, and affects his independence in the exercise of judicial power, and because it is the duty of the legislature when it discharges the duty or exercises the power of creating a court to provide for the independent maintenance of the judge by fixing certain uniform and adequate compensation; (b) article 6, section 1, paragraph 1, of the constitution (Code, § 2-2901), providing that judicial powers shall be exercised by the Supreme Court, Court of Appeals, superior courts, courts of ordinary, justices of the peace, commissioned notaries public, and such other courts as have been or may be established by law, and because the court of which petitioner was the judge was within said constitutional provision, and the power to fix his salary can not be delegated; (c) article 3, section 1, paragraph 1, of the constitution (§ 2-1201) providing that the legislative power of the State shall be vested in the General Assembly, and said power can not be delegated, and the establishment of a salary is essentially a legislative power; (d) article 1, section 1, paragraph 23 (§ 2-123), providing that legislative, judicial, and executive power shall remain separate, and because petitioner is a constitutional judicial officer of the State, and because said statute confers upon a board of county commissioners the power to fix the salary of a constitutional judicial officer; and (e) article 1, section 4, paragraph 1 (§ 2-401), providing that laws of a general nature shall have uniform operation through the State, and because said statute in a given case conferring upon a particular board the power to fix the salary is a special law.

In the act creating the municipal court of Macon and the acts amendatory thereof it was provided that the salary of the judge should be paid by the treasurer of Bibb County. The offices, court-room, books, filing-cases, clerks, sheriff, bailiffs, and reporters of the municipal court of Macon are all furnished by the County of Bibb. In article 6, section 19, paragraph 1, of the constitution (Code, § 2-4601) it is declared: "The General Assembly shall have power to provide for the creation of county commissioners in such counties as may require them, and to define their duties." The Code, § 23-904, declares: "The board of county commissioners of roads and revenues hereby created shall have exclusive jurisdiction over and control of all county matters, such as public roads, bridges, the working of convicts, private roads, county finances, the levying and collection of taxes for county purposes, the management, control over and disbursing of county funds," etc. In pursuance of this last amendment to the constitution the legislature created the Board of Commissioners of Bibb County. Ga. L. 1873, p. 219. By an act approved March 10, 1933 (Ga. L. 1933, p. 346), the legislature authorized the Board of Commissioners of the County of Bibb to annually fix the salaries of all officers of the municipal court of Macon, including the judge. It is the provision in the act last cited which makes it the duty of the board of commissioners to fix the salary of the judge which is under attack in the instant case. The precise question here involved has not heretofore been ruled upon by this court. In *Abbott* v. *Commissioners of Fulton County,* 160 *Ga.* 657 (129 S. E. 38), the court was dealing with an act which made it the duty of the commissioners of Fulton County to fix the salaries of various county officers, including the tax-collector and the ordinary of Fulton County. The *Abbott* decision dealt only with the right of the legislature to confer upon the commissioners of Fulton County the right to fix the salary of the tax-collector. This court sustained that right, and in the opinion it was said by way of obiter that there is no inhibition against the legislature allowing the ordinary to fix his own salary, and that the act was not void on the ground of delegation of a legislative authority. No attack appears to have been made upon that act in so far as it made it the duty of the commissioners to fix the salary of the ordinary, who is a constitutional judicial officer. *Moseley* v. *Garrett,* 182 *Ga.* 810 (187 S. E. 20), dealt with an act which gave to the grand

jury the right to fix the salary of the solicitor-general of the Macon Judicial Circuit; and it was held that this could not be done. It is to be noted, however, that the *Moseley* case is not authority for the proposition that the legislature may not empower another governmental unit to fix the compensation of certain officers where the constitution does not expressly declare that the General Assembly itself shall fix their salary. The decision in *Truesdel* v. *Freeney,* 186 *Ga.* 288 (197 S. E. 783), dealt with power of the legislature to delegate to the commissioners of Bibb County power to fix the salary of the clerk of the municipal court of Macon. That case did not of course deal with a judicial officer. It is the contention of counsel for plaintiff in error that the judge of the municipal court is a constitutional judicial officer, and secondly that the power to fix his salary is an incident to the creation of the office, and is a non-delegable legislative function.

The judge of the municipal court is a constitutional judicial officer only in the sense that he is the judge of a court authorized by the constitution to be created. He is not a constitutional judicial officer in the sense that he presides over a court required to exist by the constitution. The argument to the contrary is that since the justice's court is in the larger sense a constitutional court and since the constitutional amendment provides that such municipal courts as are created shall take the place of justices' courts in the area over which the municipal courts exercise jurisdiction and to that extent the justices' courts are abolished, this makes them constitutional courts. The same argument could be used in support of an assertion that members of boards of commissioners are constitutional officers because the constitution provides that they may be created and when so established shall take over the county affairs that have heretofore been under the jurisdiction of the ordinary. Certain it is that the constitution does not require the creation of municipal courts nor does it fix their salaries nor does it declare that the General Assembly must fix the salaries of the judges of such courts.

There are many powers which ordinarily would be classed as legislative functions which may nevertheless be delegated. An outstanding case was dealt with in *Georgia Railroad* v. *Smith,* 70 *Ga.* 694. The authorities are by no means uniform to the effect that the fixing of judicial salaries is a legislative function. Without

undertaking to list the authorities pro and con, it is sufficient to refer to Arnett *v.* State ex rel., 168 Ind. 180 (80 N. E. 153, 8 L. R. A. (N. S.) 1192), and the authorities there cited and discussed. We have in this State, not an isolated instance of the legislature delegating its power to fix salaries of judicial officers, but many of them. In *Truesdel* v. *Freeney,* supra, attention was called to the fact that for many years we had a general law providing for the creation of so-called grand-jury city courts, the act providing that the salary of these judges should be fixed by the grand jury; and the same has been true for many years of the county courts. It may be added that in the charters of almost every municipal corporation in this State there is created a police court to be presided over by the mayor, mayor pro tem. or recorder, in which jurisdiction is conferred upon the presiding officer thereof, not only to try persons charged with offenses against municipal ordinances, but also to bind over in proper cases defendants to State courts where it appears such defendants have violated laws of the State. In most or all of these municipal charters the right to fix the salary of these officers is left to the municipal authorities, although the magistrates who preside over these police courts are charged with the duties above mentioned. It is, however, said that none of these are constitutional judicial officers. As indicated above, they are as much constitutional judicial officers as judges of the municipal courts. It is true that none of these are judicial precedents. The request to review and overrule the ruling in *Truesdel* v. *Freeney,* supra, is denied. In *Low* v. *Commissioners of Pilotage, R. M. Charlton,* 302, 316, it was said: "A contemporary exposition of the Constitution, practised and acquiesced under for a period of years, fixes the construction, and the court will not shake or control it." See *Wellborn* v. *Estes,* 70 *Ga.* 390 (2 *a*), *Howell* v. *State,* 71 *Ga.* 224 (2 *c*) (51 Am. R. 259), and dissenting opinion in *Park* v. *Candler,* 114 *Ga.* 466, 500 (40 S. E. 523). The amendment to our basic law authorizing our municipal courts professed to do nothing more than to authorize the legislature in certain of the larger or more populous counties to abolish justices' courts and to substitute a municipal court therefor. Nothing was said about the salary of the municipal-court judges, or how it should be fixed. The constitutional amendment merely gave authority to the legislature to create local courts for local purposes, to meet local needs. They

were not required to be uniform in character. There is nothing in the amendment that makes it mandatory on the General Assembly to establish them in the relatively few counties to which the amendment relates. The legislature may pass any law not expressly or by necessary implication prohibited by the constitution of this State or by laws of the United States or its constitution.

With the argument that placing in the hands of a local board power to fix compensation of the court would tend to destroy it or to hamper its independence, this court has nothing to do. *Winter* v. *Jones,* 10 *Ga.* 190 (6) (54 Am. D. 379). The Supreme Court is dealing, not with the expediency of the legislation, but with its legality. That the power of the county board of commissioners to fix the salary of the municipal-court judge is the power to reduce it to such a small sum as will deprive the judge of an adequate salary, and therefore in effect the commissioners have the power to practically abolish the court by making no worth-while provision for such compensation, is not borne out by facts taken from the judicial history of this State. Before the constitution of 1798 there was in every county in this State an inferior court. The constitution of 1798 declared that there should be an inferior court in every county. No salary was therein fixed for the justices. It did contain a provision that "They may be compensated for their services in such manner as the legislature may by law direct." McElreath on the Constitution of Georgia, 262, § 394. As a matter of fact the inferior court was a court of dignity and power. In civil matters it possessed the same jurisdiction as the superior court, except as to those matters in which exclusive jurisdiction was vested in the superior court. It was also given a criminal jurisdiction. It had jurisdiction of county affairs, and also exercised until the year 1851 all the powers of a probate court. The legislature made no provision for the salaries until shortly before 1850, the belated provision being that the justices should fix their own compensation not exceeding so much. Thus it appears that for many years there was a court in Georgia which the constitution declared should exist in every county, that was inferior in name only, that existed without any salary at all.

It follows that the legislation under attack was not subject to the assault made upon it.

*Judgment affirmed. All the Justices concur.*