## 43584. STEPHENS v. STEWART.

WHITMAN, Judge. 1. At common law a parent incurred no liability for the tort of a child from the mere relation of parent and child. Liability could be based, however, on the ordinary principles of liability of a principal for the acts of his agent, or of a master for his servant. Therefore, the meaning of *Code Ann.* § 105-108 providing that "Every person shall be liable for torts committed by . . . his child, or his servant, by his command or in the prosecution and within the scope of his business, whether the same shall be by negligence or voluntary," which is merely a codification of the common law on the subject, is that the liability of a

parent for the torts of his child, like his liability for those of his servant, arises only when the commission of the tort was "by his command or in the prosecution and within the scope of his business." *Chastain v. Johns,* 120 Ga. 977, 979 (48 SE 343, 66 LRA 958). Thus: "A father is not liable for a tort of his minor child, with which he was in no way connected, which he did not ratify, and from which he did not derive any benefit." Id. at page 977; *Hulsey v. Hightower,* 44 Ga. App. 455, 458 (161 SE 664); *Skelton v. Gambrell,* 80 Ga. App. 880 (3) (57 SE2d 694); *Herrin v. Lamar,* 106 Ga. App. 91 (126 SE2d 454).

Also, consistent with common law principles, a parent may be held liable for an injury caused directly by his minor child where the parent's own original negligence or contributing negligence has made the child's act possible. For example, an action will lie for negligently permitting a child to have access to a dangerous weapon (*Hulsey v. Hightower,* 44 Ga. App. 455, supra), or negligence per se in permitting a child to have items which a valid ordinance or statute prohibits, *Barlow v. Lord,* 112 Ga. App. 352 (145 SE2d 272); *Faith v. Massengale,* 104 Ga. App. 348 (121 SE2d 657). Also, if a parent *knows* his child is irresponsible, incompetent, or unqualified regarding certain activities, *and knowingly permits* the child to engage in such activities, this may constitute such negligence on the part of the parent as will support a recovery. *Davis v. Gavalas,* 37 Ga. App. 242 (139 SE 577). In such cases, predicated on the parent's negligence, the ordinary elements of all negligence cases must be shown, including, of course, the requirement that the parent should have foreseen or anticipated that some injury would likely result from the negligence. *Chester v. Evans,* 115 Ga. App. 46, 50 (153 SE2d 583).

2. In the case before us for decision, a 16-year old boy swimming in Lake Sidney Lanier was killed when struck by a 215 horse power inboard motor boat. The decedent and his friend were swimming 75 to 100 feet from shore in relatively deep water in an area used by both boats and swimmers. They were swimming with the aid of an innertube and a ski-belt. The boat was being operated by a girl 13½ years old. A girl friend was the only other person in the boat with her. The mother of the deceased sued for the wrongful death of her son and named the father of the girl as the defendant.

There was an allegation in the complaint that the defendant's minor daughter was inexperienced and incompetent to have control of the boat. This allegation could be construed, under our new liberal rules of pleading, as an allegation of primary negligence chargeable to the defendant. However, this allegation was not supported by *any* competent evidence on the trial. There was general testimony that an older person "with the same experience" would have better judgment in boat operation. But the evidence was that the daughter had been trained and was competent in boat operation.

There was absolutely no evidence that would support a finding that the daughter was carrying out any of her defendant-father's business, or was acting at the time under his command, or that defendant received any benefit from her action, or that he ratified her action, which would support a recovery under the theory of respondeat superior.

But the case was submitted to the jury on the theory that any negligence found against the daughter was imputable by law to the defendant. The apparent basis for this action by the trial court appears later in this opinion. A verdict was returned for the plaintiff. The defendant appealed from the judgment on the verdict and has enumerated several matters as error, the first of which is that the trial court erred in overruling the defendant's motion for a directed verdict.

3. The question for determination is whether the minor child's negligence in these circumstances could be imputed to the father. As discussed in Division 1, the negligence of the daughter could be imputed to the father if the daughter committed the tort at his command or while acting within the scope of her authority as his agent or servant. There is an analogous situation in which the requirement that agency be found is simplified or perhaps dispensed with, i.e., in cases where the head of a family who owns an automobile may be held liable for the negligent acts of family members in the use of the automobile. This is the "family-purpose" doctrine. "The doctrine as applied in Georgia is that, where one furnishes an automobile to members of his family for pleasure or convenience, etc., he is liable for injuries inflicted by the machine while it is being negligently operated by a member of the family for a purpose for which it was furnished, on the theory that the furnishing and using of the car for such purposes is the business of the husband, and

the one operating it is the agent or servant of the owner in the course of his business." *Durden v. Maddox,* 73 Ga. App. 491, 492 (37 SE2d 219). The doctrine is an extension of the principles of agency and respondeat superior brought about by the problems which the automobile brought to society. No decision of the courts of this state has been brought to our attention wherein the family-purpose doctrine has been extended beyond its application to automobiles. In *Calhoun v. Pair,* 197 Ga. 703 (30 SE2d 180), the court declared that a father who furnishes a bicycle to his minor son (14 years old) for the purpose of going to and from school would not be liable for injuries to another caused by the son's negligence in the use of the bicycle. In Felcyn v. Gamble, 185 Minn. 357 (241 NW 37, 79 ALR 1159), the family-purpose doctrine was held to have no application to motorboats. The same result obtained in Grindstaff v. Watts, 254 N.C. 568 (119 SE2d 784), relating to a motorboat, and in Meinhardt v. Vaughn, 159 Tenn. 272 (17 SW2d 5), relating to a motorcycle. Cf. Cashell v. Hart (Fla.) 143 S2d 559. We agree with the court's observation in Grindstaff v. Watts, supra, that any extension of the doctrine should be left to legislation. Indeed, such legislation was enacted by the last session of the General Assembly and it provides:

"The owner of a watercraft shall be liable for any tort caused by the operation of such watercraft in the same manner and to the same degree as is the owner of an automobile liable for torts caused by its operation." (Ga. L. 1968, pp. 1416, 1417).

This Act was approved April 12, 1968. However, this statute altered a substantive right between parties, is not retroactive, and can have no relation to the events in the present case which occurred on July 5, 1963. *Seaboard A. L. R. Co. v. Benton,* 175 Ga. 491, 494 (3) (165 SE 593); 82 CJS 995, Statutes, § 418.

4. In its charge the court read to the jury a section of certain regulations promulgated by the Georgia State Game and Fish Commission, to wit:

"[T]he owner of a watercraft shall be liable for any injury or damages occasioned by the negligent operation of such watercraft and damage caused by their weight, or the failure to observe ordinary care. The owner shall not be liable, however, unless such watercraft was being used with his or her

express or implied consent. It shall be presumed that such watercraft is being operated with the knowledge and consent of the owner if, at the time of the injury or damage, it is under the control of a member of his or her immediate family." See Official Compilation, Rules and Regulations of the State of Georgia, Boating Regulations § 260-5.14.

This provision was read to the jury as being a provision of law upon which they might find the defendant liable. It is attacked as being an invalid, illegal and ultra vires regulation, and as conferring no right of action against the defendant. Cf. *Frankel v. Cone*, 214 Ga. 733 (107 SE2d 819).

The legislative power of the State is vested in the General Assembly. Const., Art. III, Sec. I, Par. 1 (*Code Ann.* § 2-1301). The State Game and Fish Commission is provided for by the Constitution (Art. V, Sec. IV, Par. I; *Code Ann.* § 2-3301), and has "such powers, authority, duties . . . as may be delegated or provided for by the General Assembly." The same general relationship exists between the legislature and the Game and Fish Commission as exists between the legislature and other administrative bodies. "While the General Assembly may enact general laws relating to subject matters within its jurisdiction, and authorize administrative officers or bodies, in the course of administering such statutes, to perform functions quasi-administrative in character (*Abbott v. Commissioners*, 160 Ga. 657, 664 (129 SE 38)), those functions which are essentially legislative must be performed by the legislative body, and may not be delegated to executive or ministerial officers. *Southern R. Co. v. Melton*, 133 Ga. 277 (65 SE 665); *Zuber v. Southern R. Co.*, 9 Ga. App. 539 (71 SE 937)." *Moseley v. Garrett*, 182 Ga. 810, 816 (2) (187 SE 20). See also *Southern Co-Operative Foundry Co. v. Drummond*, 76 Ga. App. 222, 224 (45 SE2d 687).

The initial delegation of authority by the legislature to the Game and Fish Commission to make and enforce boating regulations is found in an Act of the General Assembly of Georgia, 1960 session, known as the "Georgia Motorboat Numbering Act." The Act provides as its purpose: "An Act to provide for the regulation of marine traffic; to provide for licensing and numbering of motorboats; to provide the procedure connected therewith and for fees and the disposition thereof; to provide for definitions of terms used

in the Act; to provide for the formation of rules and regulations for carrying out the purposes of this Act; to provide for the penalties for violation of this Act; to provide for an effective date; to repeal conflicting laws; and for other purposes." Ga. L. 1960, p. 235.

After setting forth the boats and boat owners to which the Act applies, and after setting forth the means and manner of licensing and numbering boats, for the keeping of records, and the duty of owners to report accidents and collisions, the Act then sets forth the duty and responsibility to be discharged by the Game and Fish Commission as follows: "Section 10. The Commission shall have authority to adopt all rules and regulations necessary for the administration and enforcement of the provisions of this Act. . . When so promulgated, the rules and regulations shall have the force and effect of law and the violation thereof shall be a misdemeanor and punished by law. Section 10A. The Commission, to promote safety in boating, is hereby authorized to adopt, promulgate and enforce safety rules and regulations relative to boat equipment, operation, lights and navigation rules as the Commission shall deem necessary; provided, however, that such rules and regulations promulgated and adopted by the Commission each year shall remain in force and effect until the next regular session of the General Assembly, at which time the General Assembly shall confirm or reject said rules and regulations."

We believe the Motorboat Numbering Act to have been both a valid exercise of legislative power and a valid delegation of authority. But we find and hold that the Commission exceeded its delegated authority, i.e., the authority to make regulations for the protection of the general public, its health, safety, and general welfare in the area of motorboat operation, when it attempted to promulgate a rule of civil liability between private citizens. We need not decide whether the legislature could have delegated to the Commission such authority. In this case the legislature simply did not do so; and the Commission therefore could not act where it had no authority.

The fact that the legislature at its next session passed a resolution "confirming" all the rules and regulations promulgated by the Commission pursuant to the Act is of no import. The legislature had not delegated such authority at the outset

and could not confirm what had been done without valid authority.

5. The waters of Lake Lanier were held not to be a part of the navigable waters of the United States in Stephens v. Stewart, U.S. Dist. Ct. N.D. of Ga. (Civil Case No. 8749, unreported), a judgment from which there was no appeal. Hence the plaintiff cannot rely upon admiralty law or Federal statutes which deal with the operation of watercraft on navigable waters as a basis of imposing liability on the vessel's owner.

6. There being no basis in the law or the evidence for the imposition of liability on the defendant for the negligence of his daughter in the operation of the motorboat, it was error to deny the defendant's motion for a directed verdict. It is not necessary to pass upon the additional enumerations of error.

*Judgment reversed. Felton, C. J., and Eberhardt, J., concur.*

ARGUED APRIL 1, 1968—DECIDED NOVEMBER 18, 1968—REHEARING DENIED DECEMBER 11, 1968—

*Nall, Miller, Cadenhead & Dennis, A. Paul Cadenhead, Dennis J. Webb,* for appellant.

*Joseph E. Cheeley, Charles H. Hyatt,* for appellee.