## HENDERSON, marshal, *v.* HEYWARD.

What is known as the "general welfare" clause in a municipal charter does not authorize the passage of an ordinance making it penal for one who has lawfully purchased, without the limits of the municipality, alcoholic liquors, to receive the same therein without paying a specific tax of a given amount for the privilege of so doing. The above is true notwithstanding the sale of such liquors is absolutely prohibited within the limits of such municipality.

Argued November 20, — Decided December 1, 1899.

Habeas corpus. Before Judge Harris. City court of Cartersville. July 1, 1899.

*John W. Akin*, for plaintiff in error.

*James B. Conyers* and *Bennett J. Conyers*, contra.

COBB, J. ·Heyward was arrested under a warrant charging him with the violation of an ordinance passed by the municipal authorities of the City of Cartersville, of which the following is a copy:

" Whereas, this being a prohibition city and county by a vote of the people, and, after their best efforts to protect themselves from the curse of intoxicants, the shipment of vinous, malt, and distilled liquors continue to be made into our community, to the injury and detriment of the morals, good order, prosperity and general welfare of this community, and should be prevented or controlled; therefore the Mayor and Aldermen of the City of Cartersville, in the exercise of the general welfare, police, and other powers vested in them by the laws and the charter of the said city, and to accomplish the purposes heretofore enumerated, do enact and ordain as follows:

" Section 1.   That on and after the 4th day of March, 1899, it shall·be unlawful for any person or persons, corporation or company, to receive from any common carrier or person any package, jug, demijohn, or bottle of vinous, malt, or distilled liquors in said city, until he, she, or they have paid a specific tax of five dollars on each gallon or fraction thereof.   Said specific tax must be paid to the treasurer of the city, and a receipt of the treasurer must be presented to any common carrier or person before the delivery of such packages of intoxicants.

" Section 2.  Be it further ordained by the authority aforesaid, that any person or persons, company or corporation, who shall receive or have delivered to them any package or packages of distilled, vinous, or malt liquors, without first procuring and exhibiting the receipt of the treasurer for the specific tax on · such package or packages of intoxicants aforesaid, shall, on conviction thereof, pay for each violation of this ordinance a fine of fifty dollars or be worked thirty days in the chain-gang of the city, either or both at the discretion of the court.

" Section 3.   Be it further ordained that any express company, railroad company, or other carrier public or private, or

any agent or employee thereof, who shall deliver to any person in said city any of the packages hereinbefore enumerated, without having produced to such carrier the receipt from the treasurer hereinbefore provided for, shall also be subject to the same penalties prescribed herein for violation of this ordinance.

"Section 4.   Provided, that this ordinance shall not apply to the bringing and delivery, by one citizen of said city, to another citizen of said city, of not exceeding one quart of spirituous liquors for medicinal purposes, to be furnished only upon the prescription of a sober, reputable physician that the same is necessary and to be used for medical purposes only."

Section 5 repeals conflicting laws.

While in custody Heyward applied to the judge of the city court of Cartersville for a writ of habeas corpus, alleging in his petition that the ordinance which he was charged with having violated was invalid, for the reason that the municipal authorities had no power to pass the same, and that therefore he was held in illegal custody.   Upon the return of the writ a hearing was had, and a judgment rendered discharging the petitioner from custody, on the ground that the ordinance was void.   To this judgment the marshal excepted.

Counsel for plaintiff in error did not expressly concede that the ordinance in question could not be upheld as an exercise either of the taxing or license power of the municipal authorities of Cartersville, but his entire argument was directed to the establishment of the proposition that the passage of the ordinance was a legitimate exercise of the police power.   If we regard the amount required by the ordinance to be paid, as a condition precedent to the reception and delivery of the liquors therein enumerated, as a tax upon property, it must fail as such; for it is neither ad valorem nor uniform.   Nor can it be regarded as a specific tax or the imposition of a sum in the nature of a license fee, because under its charter the City of Cartersville has authority to impose such a tax or license fee only upon an occupation or business, and the buying of a single vessel containing whisky certainly can not be properly regarded as an occupation or business.   We pass, therefore, to a discussion of the question as to whether the ordinance can be upheld as a valid exercise of the police power of the municipality.

It is conceded that the authorities had no express charter authority to pass the ordinance in question; but it is contended that it had the power under the general welfare clause of its charter, which is in the following language: "The mayor and aldermen shall have power to pass all ordinances that they may consider necessary to the peace, good order, health, prosperity, comfort and security of the city and the citizens thereof, not inconsistent with the constitution and laws of this State and of the United States." The police power of a State may be exercised by the General Assembly directly, or indirectly through the medium of the subordinate public corporations of the State. It may be that the State would have a right to prohibit the purchase of whisky. That the State has a right to prohibit absolutely the sale of whisky is no longer an open question, either in this court or in the Supreme Court of the United States. *Perdue* v. *Ellis*, 18 *Ga.* 586; *Hill* v. *Dalton*, 72 *Ga.* 314; Mugler *v.* Kansas, 123 U. S. 623. None of the decisions of this court, however, go to the extent of holding that a law prohibiting the sale of liquor in a designated territory has the effect of destroying entirely all property right in alcoholic liquors which may be brought into such territory. On the contrary, it has been expressly held that the fact that the sale of liquor was prohibited in a designated part of the territory of the State does not destroy the right of a person to own such an article within such territory. *Fears* v. *State*, 102 *Ga.* 274.

It may be contended with great force that if the State, notwithstanding it recognized a property right in alcoholic liquors, can under its police power entirely destroy the right of the owner of such liquors to sell or dispose of the same within the limits of the State, which would, in some instances, be a practical confiscation of the property, it has the power to declare that no person shall by purchase come into possession of such property within the limits of the State. Laws prohibiting the sale of whisky are upheld as constitutional upon the ground that its sale is against the best interests of the public at large, and is a business which, if not inherently evil, is of such a nature that its presence is a constant menace to the peace and

good order of society, as well as the welfare of individuals. If this be true, it would seem to follow that the State might enact any law which would effectually prohibit the traffic. A law prohibiting the sale would, if effectually enforced, prohibit the buying; and so also the prohibition of the purchase would likewise prohibit the sale. The prohibition of the sale, therefore, puts a ban upon the entire traffic. Of course a law making penal the sale would not, without more, make penal the buying; but the practical effect of such a law, if enforced would be to prohibit the buying. It would seem to follow, therefore, that the State might go further than it has already gone, and make penal the buying. But be this as it may, we are clear that a municipal corporation can not, without express legislative authority so to do, pass any ordinance making penal the buying of alcoholic liquors from one lawfully authorized to sell the same. It may be laid down as a general rule, that, in addition to its express powers, a municipal corporation can only exercise those which are necessarily or fairly implied in or incident to its express powers, and those that are indispensable to the declared objects and purposes for which the corporation was created. 1 Dill. Mun. Cor. § 89. The power to pass a law making penal the purchase of intoxicating liquors is certainly not indispensable to the purpose for which the City of Cartersville was incorporated; there is no express grant of authority to this effect; and hence the power is wanting, unless it can be implied from its general welfare clause above quoted. A municipal corporation has no power to adopt ordinances for the prohibition or regulation of the sale of liquors, unless expressly authorized to do so, or unless such ordinances fairly and legitimately fall within the scope of the powers conferred upon them in general terms. Black, Intox. Liq. § 220. As an instance of the strictness with which the powers of municipal corporations over the subject of liquors have been construed, see *Hill* v. *Decatur*, 22 *Ga.* 203. In that case, notwithstanding it appeared that the commissioners of the town of Decatur had authority "to restrict, prohibit, and regulate the sale, vending, and distribution" of intoxicating liquors; "provided, no license to retail spirituous liquors shall exceed fifty

dollars," it was held that the commissioners had no power to prohibit absolutely the sale of liquor, and that they had authority only to grant a license upon the payment of a fee not exceeding fifty dollars. In *Sanders* v. *Commissioners*, 30 *Ga.* 679, it was held that the power "to regulate the rates of tavern licenses" does not confer the power to grant licenses; there being in existence a different system of issuing such licenses. It was further ruled that the power to grant tavern licenses was not embraced in a general clause of a town charter conferring upon it the power of general legislation for itself; Judge Stephens assigning as a reason for the latter ruling that "The courts will not infer that the legislature intends to authorize a local departure from a general policy of the State, unless the local exception is expressed in specific terms."

In the case of *Mayor of Leesburg* v. *Putnam*, 103 *Ga.* 110, it was held that neither the general welfare clause usually found in municipal charters, nor the special power "to license and regulate the management of barrooms, saloons," etc., includes the power to establish and operate under municipal agency a dispensary for the sale of spirituous and malt liquors. This decision was made at a time when it could not be said to have been against the general legislative policy to operate dispensaries; for a number were being operated in the State under direct sanction of the General Assembly. But the court construed the grant of power strictly, and said that a dispensary was neither a barroom nor a saloon in legislative contemplation. If the general welfare clause of a municipal charter would not authorize the city authorities to establish and operate a dispensary as a means of regulating and restricting the sale of liquors, it is difficult to see upon what principle such a clause would authorize the passage of an ordinance prohibiting the purchase of such liquors, or interfering with the right to receive the same after a purchase from one who was lawfully authorized to sell. The one would be no less a regulation than the other. It would seem, therefore, to follow from these decisions that municipal corporations would not, without express legislative sanction, have authority to prohibit either the selling or buying of intoxicating liquors within their

limits.   They may, of course, regulate to a certain extent the traffic in such liquors, but even then their powers, under the decisions above referred to, are not very broad under the usual general welfare clauses found in municipal charters.   If the rule is so strict as regards the sale of whisky, which the General Assembly has seen fit to deal with as being within the police power of the State, and which under the settled public policy of the State has been either prohibited altogether or allowed under the most rigid regulations, how much stricter ought it to ·be as regards a subject with which the General Assembly has never seen fit to deal in any way whatever. Whenever the General Assembly has by direct enactment, or by its settled public policy derivable from the various statutes passed from time to time, brought within the police power of the State any particular subject, then the municipal authorities of a town or city would seem to have the power, under the usual general welfare clause in municipal charters, to deal with such subject by proper ordinance, limited only by the established rule that they can not deal with an act which is declared to be a violation of the criminal laws of the State.   See in this connection 1 Dill. Mun. Cor. § 329.   The sale of liquor is absolutely prohibited in some of the counties of this State. In other counties its sale is only permitted under licenses granted by the proper authorities; in still others liquors are sold under governmental agency.   In each of such localities the General Assembly directly brings within the police power the subject of the sale of this article, by expressly prohibiting it on the one hand, or by regulating its sale on the other. Having thus declared that the sale of liquors is a matter legitimately within the police power of the State and having passed · regulations in reference to the same, it necessarily follows that when it grants to a municipal corporation the power usually conferred upon such corporations, they may deal with the sale of liquors within their limits as a subject which is within the police regulation of the State; and therefore ordinances passed for the purpose of furthering this end are legitimately within the authority of a municipal corporation under its general welfare clause.   Such is what we understand to be the reason at

the foundation of the decisions of this court in *Paulk* v. *Sycamore,* 104 *Ga.* 728, *Brown* v. *Social Circle,* 105 *Ga.* 834, and *Papworth* v. *Fitzgerald,* 106 *Ga.* 378. These decisions were departures from the strict rule of construction employed in the earlier cases, and we think, under the principle announced in them, a municipal corporation may, under authority of its general welfare clause, pass ordinances, within reasonable limits, dealing with the subject of the sale of intoxicating liquors.

But the General Assembly never has seen proper to deal in any way whatever with the subject of the purchase of intoxicating liquors, except as such subject may grow incidentally out of the subject of the sale. The General Assembly has never passed any law making penal the purchase of liquors. The policy of a State is to be ascertained from its published statutes and laws. There never having been in force any law making penal the purchase of intoxicating liquors within this State, it may fairly be said that such a law would be a departure from its settled public policy; and any such departure must commence with the General Assembly itself, either by a direct law to this effect, or by granting to some subordinate public corporation of the State express authority to make such a departure. The purchase of liquor from one who is himself violating the law in making the sale is, although not a crime under the law of this State, certainly such a transaction as is contrary to public policy. However, the purchase of liquor in this State from one who is lawfully authorized to make the sale is an act which in its nature is neither criminal nor contrary to public policy. It therefore follows that the reception by the purchaser of liquor so bought is not an act which can be legitimately dealt with by the authorities of a municipal corporation as an act within the police power of the State, in the absence of express power so to do. It necessarily follows from the foregoing, that when the General Assembly gave to the City of Cartersville the power embraced in its general welfare clause above quoted, it did not confer upon it authority to pass the ordinance now under consideration. It is true that the ordinance does not in express terms prohibit absolutely the buying of liquor; and even if the condition annexed to

the privilege of buying does not practically amount to prohibition, it certainly has the effect of deterring a person from exercising and hampers a person in the exercise of a right which is neither prohibited by express law nor which can be said to be in any way contrary to the public policy of the State, as it is at this time established.  The ordinance does not purport to deal exclusively with the subject of the reception of liquor from one who has no authority to sell the same.  On the contrary, taking into consideration the entire ordinance, the conclusion is inevitable that the purpose of the ordinance is to deal with the subject of the reception of liquors by one who has lawfully purchased the same without the limits of the city.  So construing it, it is void for want of authority in the municipal legislature to pass it.  The judge of the city court did not err, therefore, in ordering that the petitioner be discharged from custody.  *Judgment affirmed.  All the Justices concurring.*