### SHAVER, clerk, *v.* MARTIN.

1. The operation of a pool or billiard room for public entertainment is a business which, from its very nature, comes within the police power of the State. Such power may be exercised directly by the State or indirectly through the medium of the subordinate public corporations of the State.
2. Under the general welfare clause of the charter of the City of Moultrie, the ordinance prohibiting public billiard and pool rooms was valid and not unconstitutional for any reason assigned.
3. It follows that the court erred in granting a mandamus absolute, requiring the municipality to issue a license to the applicant authorizing the operation of such billiard and pool room.

No. 6451. MAY 17, 1928.

Mandamus. Before Judge W. E. Thomas. Colquitt superior court. January 19, 1928.

*Hoyl H. Whelchel,* for plaintiff in error.

*James L. Dowling,* contra.

GILBERT, J. This was an application for mandamus to require the City of Moultrie to issue a license to the applicant for operation of a billiard and pool room. The defendant answered, setting up an ordinance of the city prohibiting operation of billiard and pool rooms. The applicant insisted said ordinance was void, because unconstitutional in that it violated the due-process clause of the State constitution (Civil Code of 1910, § 6359). The court granted a mandamus absolute, and the defendant excepted.

"Whenever the General Assembly has by direct enactment, or by its settled public policy derivable from the various statutes passed from time to time, brought within the police power of the State any particular subject, then the municipal authorities of a town or city would seem to have the power, under the usual general welfare clause in municipal charters, to deal with such subject by proper ordinance, limited only by the established rule that they can not deal with an act which is declared to be a violation of the criminal laws of the State. See, in this connection, 1 Dill. Mun. Cor. § 329." *Henderson* v. *Heyward,* 109 *Ga.* 373, 379 (34 S. E. 590, 47 L. R. A. 366, 77 Am. St. R. 384). See also *Wright* v. *Macon, 5 Ga. App.* 750, 760 (64 S. E. 807), and cit. In the *Henderson* case, supra, it was said: "The police power of a State may be exercised by the General Assembly directly, or indirectly through the medium of the subordinate public corporations of the State." This decision digests previous ones by this court upon the question. There is neither a general law nor any provision in the charter of the City of Moultrie *expressly* delegating to that municipality the right to wholly prohibit the carrying on or conducting of the business of a public billiard or pool room. The general welfare clause of the charter provides as follows: "That the mayor and aldermen aforesaid shall have power to pass all such ordinances and regulations for the complete government of the city aforesaid as shall be deemed necessary and proper, and for the suppression of disorderly conduct, the protection of life, liberty, and property; the maintenance of the public peace and the protection of public health, which are not repugnant to the constitution and laws of this State, or of the United States, as they may see proper to do; and to prescribe and enforce penalties for the violation of the same." Ga. Laws 1895, p. 261, § XIV. In 1925 the General Assembly passed an act providing for the regulation and taxing of billiard and pool rooms in this State. In § 17 of that act it was provided that "This act shall not be construed as authorizing the issuance of billiard-room license by city officials or tax-collectors for the operation of public billiard rooms in any city or town in this State where the operation of a public billiard room is now prohibited by local ordinance." Ga. Laws 1925, pp. 286, 291. This is a clear recognition by the General Assembly of the power to prohibit by municipalities, without an express delegation. The petition for

mandamus in this case was filed in 1928, subsequently, therefore, to the passage of the above-quoted act. The City of Moultrie had enacted, and there was in existence, an ordinance wholly prohibiting the business of public billiard or pool rooms, and it is to be inferred that under the ordinance in force at the time this suit was filed there was no provision for issuing licenses to billiard and pool rooms or for any license fee therefor. It has been well settled in this State that "The operation of a pool or billiard room for public entertainment is a business which, from its very nature, admits of strict regulation under the police power." *Beaty* v. *Richardson,* 164 *Ga.* 185 (138 S. E. 54), and cit. The State has enacted a number of penal statutes intended to safeguard the public from influences naturally tending to surround public billiard and pool rooms. It is unlawful to permit minors to play or to "remain in" such rooms, or to make false certificate as to age. Penal Code (1910), § 406. The act of 1925 also made it penal to violate other designated sections of the act. The penal provision of the act is codified in 13 Park's Code Supp. 1926, §§ 702(ee), 702(ff), and in Michie's Penal Code, § 406(2) ; and the sections which it is penal to violate are codified in 12 Park's Code Supp. 1926, §§ 1770(yy) et seq., and in Michie's Civil Code, § 1762(20-35). The act enumerates sundry prohibitions. It would seem from a reading of the statutes that the General Assembly deemed the strictest regulations necessary, and so exercised its police power. As seen above, good care was exercised in the statute not to interfere with municipalities which desired to prohibit such institutions entirely. This court has repeatedly upheld ordinances based upon "general welfare clauses," where keeping intoxicating liquors on hand for sale was the evil attacked, and where the State had not occupied that field of legislation. Some of those decisions are: *Paulk* v. *Sycamore,* 104 *Ga.* 728 (31 S. E. 200) ; *Brown* v. *Social Circle,* 105 *Ga.* 834 (32 S. E. 141) ; *Cunningham* v. *Griffin,* 107 *Ga.* 690 (83 S. E. 664) ; *Rooney* v. *Augusta,* 117 *Ga.* 709 (45 S. E. 72) ; *Reese* v. *Newnan,* 120 *Ga.* 198 (47 S. E. 562) ; *Robinson* v. *Americus,* 121 *Ga.* 180 (48 S. E. 924) ; *Tucker* v. *Moultrie,* 122 *Ga.* 160 (50 S. E. 61). It follows that the City of Moultrie acted within the laws and constitution of this State in prohibiting by ordinance the operation of public billiard and pool rooms.

The validity of such an act as affected by the due-process clause

of the Federal constitution was decided in Murphy *v.* California, 225 U. S. 623 (56 L. ed. 1229, 32 Sup. Ct. 697, 41 L. R. A. (N. S.) 153). The opinion in that case was written by that beloved Georgian and scholar, Mr. Justice Joseph Rucker Lamar. The City of South Pasadena, California, in pursuance of police power conferred under the constitution of that State, passed an ordinance prohibiting any person from keeping or maintaining any billiard or pool room establishments for hire and public use. The constitutional provision applicable is as follows: "Any county, city, town or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." Article 11, section 11, constitution of California. In the opinion of the Supreme Court it was said: "The 14th Amendment protects the citizen in his right to engage in any lawful business, but it does not prevent legislation intended to regulate useful occupations which, because of their nature or location, may prove injurious or offensive to the public. Neither does it prevent a municipality from prohibiting any business which is inherently vicious and harmful. But between the useful business which may be regulated and the vicious business which can be prohibited lie many nonuseful occupations which may or may not be harmful to the public, according to local conditions, or the manner in which they are conducted. Playing at billiards is a lawful amusement; and keeping a billiard hall is not, as held by the Supreme Court of California on plaintiff's application for habeas corpus, a nuisance per se. But it may become such; and the regulation or prohibition need not be postponed until the evil has become flagrant. That the keeping of a billiard hall has a harmful tendency is a fact requiring no proof, and incapable of being controverted by the testimony of the plaintiff that his business was lawfully conducted, free from gaming or anything which could affect the morality of the community or of his patrons. The fact that there had been no disorder or open violation of the law does not prevent the municipal authorities from taking legislative notice of the idleness and other evils which result from the maintenance of a resort where it is the business of one to stimulate others to play beyond what is proper for legitimate recreation. The ordinance is not aimed at the game, but at the place; and where, in the exercise of the police power, the municipal authorities determine that the keeping of such resorts

should be prohibited, the courts can not go behind their finding and inquire into local conditions, or whether the defendant's hall was an orderly establishment, or had been conducted in such manner as to produce the evils sought to be prevented by the ordinance. As said in Booth *v.* Illinois, 184 U. S. 425, 429, 46 L. ed. 623, 626, 22 S. Ct. 425: 'A calling may not in itself be immoral, and yet the tendency of what is generally or ordinarily or often done in pursuing that calling may be towards that which is admittedly immoral or pernicious. If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the State thinks that certain admitted evils can not be successfully reached unless that calling be actually prohibited, the courts can not interfere, unless, looking through mere forms and at the substance of the matter, they can say that the statute enacted professedly to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law.' Under this principle ordinances prohibiting the keeping of billiard halls have many times been sustained by the courts. Tanner *v.* Albion, 5 Hill, 121, 40 Am. Dec. 337; Tarkio *v.* Cook, 120 Mo. 1, 41 A. S. R. 678, 25 S. W. 202; Clearwater *v.* Bowman, 72 Kan. 92, 82 Pac. 526; Corinth *v.* Crittenden, 94 Miss. 41, 47 So. 525; Cole *v.* Culbertson, 86 Neb. 160, 125 N. W. 287; Re Jones, 4 Okla. Crim. 74, 31 L. R. A. (N. S.) 548, 140 A. S. R. 655, 109 Pac. 570. Indeed, such regulations furnish early instances of the exercise of the police power by cities. For Lord Hale in 1672 (Rex *v.* Hall, 2 Keble, 846) upheld a municipal by-law against keeping bowling-alleys, because of the known and demoralizing tendency of such places."

Thus it was decided by the Supreme Court of the United States that such an ordinance did not offend the fourteenth amendment to the United States constitution. Without adopting all of what Mr. Justice Lamar said about public billiard and pool rooms, we hold the judgment to be sound. Likewise we hold that the ordinance of the City of Moultrie does not offend the due-process clause of the constitution of Georgia. It was, therefore, error to grant a mandamus absolute requiring the issuance of the license sought. The question involved in the *Henderson* case, 109 *Ga.* 373 (supra), was whether the "general welfare" clause in a municipal charter will authorize the passage of an ordinance making it penal

for "one who has lawfully purchased, without the limits of the municipality, alcoholic liquors, to receive the same therein without paying a specific tax of a given amount for the privilege of so doing." The court held the ordinance invalid, because "the General Assembly never has seen proper to deal in any way whatever with the subject of the purchase of intoxicating liquors, except as such subject may grow incidentally out of the subject of the sale. The General Assembly has never passed any law making penal the purchase of liquors. The policy of a State is to be ascertained from its published statutes and laws. There never having been in force any law making penal the purchase of intoxicating liquors within this State, it may fairly be said that such a law would be a departure from its settled public policy; and any such departure must commence with the General Assembly itself, either by a direct law to this effect, or by granting to some subordinate public corporation of the State express authority to make such a departure." Thus we see that the conclusion was based on the fact that the General Assembly had never settled, as the public policy of this State, that the act was within the police powers. It must be admitted that the soundness of the premise was at least open to serious question. Admit the premise unsound, and the decision must yield to many older cases. The case of *Trammell* v. *Rome*, 142 *Ga.* 602 (83 S. E. 221), is authority for the proposition that an ordinance of the City of Rome prohibiting billiard and pool rooms kept for public entertainment is not unconstitutional on the ground that it is a special law to provide for what has already been provided for by general law. In that case express authority has been delegated to the City of Rome by the General Assembly to prohibit such business by ordinance. The authority delegated was in the charter of the municipality, and the general law sought to be shown in conflict was the general tax act imposing a tax upon the keeper of billiard and pool tables for public use.

Moreover, there is another reason why the court was powerless to require the issuance of such license. Even if the ordinance prohibiting the business is unconstitutional and void, the petitioner is not entitled to demand issuance of a license to conduct his business unless there is a provision of law authorizing the municipal officers in charge of such matters to issue the same. No municipal officer is authorized to issue a license where there is no authority of law

for such act; and the court can not require that done for which there is no clear, legal authority. If there is no prohibition and no provision for a license, it would follow that the business might be pursued without a license and without payment of any fee whatever. In *Hill* v. *Commissioners of Decatur, 22 Ga.* 203, 208, mandamus was prayed to require the issuance of a license to retail liquors. The commissioners had not passed any ordinance fixing a fee for such license. This court said: "The commissioners had passed no ordinance fixing the fee of a license; they were not bound to pass any ordinance fixing such fee. They might, if they pleased, remain passive on the subject of license. Therefore, as the case stood, they were not bound to issue a license to any one, on any terms. Nor, on the other hand, did any one need a license from them. As long as they remained passive on the subject of license, every person had the right to sell liquor in the town, on complying with the general law on the subject of license. So that, after all, we think that the court was right in refusing the mandamus."

Counsel for the applicant cite *Purvis* v. *Ocilla,* 149 *Ga.* 771, 774 (102 S. E. 241). In the opinion in that case, Mr. Justice George, speaking for the court, said: "In the absence of express legislative authority, the municipal authorities can not, under the decisions of this court, prohibit the keeping of public pool rooms within the municipality; and this is true although the charter, in addition to the general welfare clause, contains a provision expressly authorizing the authorities to license or tax pool rooms. Under the rule recognized in this State the authority to license and regulate does not imply the power to prohibit, but rather implies that the business is to be allowed to continue under such reasonable regulations as the authorities may adopt." In that case, however, the question was one of regulation of billiard and pool rooms, and not prohibition of them. The power to regulate has often been held not to include the power to prohibit.

*Judgment reversed. All the Justices concur.*