## GIBSON *et al. v.* HOOD *et al.*

No. 12071. FEBRUARY 15, 1938.

*T. S. Candler, John M. Johnson, Joseph G. Collins,* and *J. B. Jones,* for plaintiffs.

*W. V. Rice, Holden & Smith,* and *J. Lon Duckworth,* for defendants.

ATKINSON, Presiding Justice. Five individuals were appointed as members of the Towns County board of education under the act of 1933 (Ga. L. 1933, p. 52), which declares that "in all counties . . having a population of not more than 4,350 nor less than 4,340, according to the official census of the United States of 1930 or any future census, the county board of education shall be appointed by the superior-court judge of the county." The grand jury of Towns superior court at the regular March term, 1937, elected five different individuals as members of said board. Towns County comes within the population of not more than 4,350 nor less than 4,340, and is the only county within that population by the census of 1930. The individuals elected by the grand jury instituted quo warranto proceedings against the individuals appointed

by the judge of the superior court. After hearing the case upon an agreed statement of facts, the judge entered an order holding that the act of 1933 was constitutional, and refusing the relief sought in the quo warranto proceedings. The plaintiffs excepted.

1. Section 3 of the act approved March 1, 1933 (Ga. L. 1933, p. 52), declares: "In all counties in this State having a population of not more than 4,350 nor less than 4,340, according to the official census of the United States of 1930 or any future census, the county board of education shall be appointed by the superior-court judge of the county." The case of *Worth County* v. *Crisp County,* 139 *Ga.* 117 (76 S. E. 747), involved change of line between the two counties under the act approved on August 11, 1911 (Ga. L. 1911, p. 183). The act provided: "That in all counties in this State having a population of not less than sixteen thousand, four hundred and twenty-two, and not more than sixteen thousand, four hundred and twenty-four, and in all counties having a population of not less than nineteen thousand, one hundred and forty-six, and not more than nineteen thousand, one hundred and forty-eight, according to the last census of the United States Government, the existing county lines between such counties may be changed in the following manner." At the time of the adoption of this act only the counties of Worth and Crisp had such population as would render the act applicable to them. The act was held unconstitutional as violative of article 1, section 4, paragraph 1, of the constitution. It was there said that "the possibility of other counties having such population by any subsequent census is too remote to form a basis for a reasonable classification on the subject of territorial generality of the act." To the same effect are the decisions in *Wilkinson County* v. *Twiggs County,* 150 *Ga.* 583 (104 S. E. 418), *Medders* v. *Stewart,* 172 *Ga.* 507 (158 S. E. 56), *Marbut* v. *Hollingshead,* 172 *Ga.* 531 (2) (158 S. E. 28), and *Reynolds* v. *Hall,* 154 *Ga.* 623 (2) (114 S. E. 891). Also to the same effect are the decisions in *Stewart* v. *Anderson,* 140 *Ga.* 31 (78 S. E. 457), and *Mayor &c. of Danville* v. *Wilkinson County,* 166 *Ga.* 460 (143 S. E. 769), in which the act involved in each (like the act of 1933 now under consideration) provided classification by population according to a previous United States census *and any future census.* In *Stewart* v. *Anderson,* supra, it was said: "The sole basis of classification mentioned in the act is that of population. It purports

to make a class of all counties having a population of 100,000 by the last census or any future census. We think that the population of a county bears such a legitimate relation to the amount of work which county officers do, and to the compensation which they receive by way of fees therefor, as to furnish a reasonable basis for a classification relatively to the constitutional requirement of generality which is now being considered. But having specified a population of one hundred thousand as the basis of the classification, the legislature did not stop there, but proceeded to hedge the act about with so many provisions, restrictions, and limitations that it not only excluded counties which might possess the alleged basis of classification by some future census, so that the act could not apply to them, but practically restricted its application to Fulton County. When it was declared that the class should consist of all counties having 100,000 inhabitants by the last or any future Federal census, with no other basis of classification than this, in order to be a general law it was necessary that it should be open to let in any county which by any future census might have that population, and to be so framed as not to exclude such a county but to apply to it."

In *Mayor &c. of Danville* v. *Wilkinson County*, supra, it was said: "According to the evidence there were only two other towns in Georgia entitled by authority of the United States census to qualify in the '400' class: Barwick, . . population 422; and High Shoals, population 424, which spreads or expands over portions of three counties, Morgan, Oconee, and Walton. Thus we see that the act of 1927 at this time, if valid, would apply to three municipalities only. Counsel for plaintiff in error argues that future census enumerations will place other towns in the classification in question, calling attention to Alto, with a population of 168, partly in Banks and partly in Habersham Counties; Baldwin in the same two counties; Belltown and Gillstown, both in Banks and Hall Counties; and Ficklin, in Taliaferro and Wilkes Counties. It could be argued that still other towns might come within the terms of the act by losing population, the maximum provided by it being 500. Atlanta for many years was altogether in Fulton County, but to-day is partly in Fulton and partly in DeKalb. Larger cities than Atlanta have disappeared entirely. Many such might be named. Babylon may be mentioned as an example. It

had a walled circumference of 55 miles lying upon both sides of the Euphrates river. St. Petersburg, now Leningrad, in a decade lost more population than Atlanta has ever had. But viewing the act in question as of the date of its passage, we think the case is clearly within the principle ruled in the cases already decided by this court, and that it falls under the general principle well stated as follows: 'The legislature may make classification for purposes of legislation and pass general laws with reference to such classes. They may classify counties. The basis of classification must have some reasonable relation to the subject-matter of the law, and must furnish a legitimate ground of differentiation. Mere arbitrary discriminations are not permissible under the constitution. If a legitimate classification is made with respect to persons, the law must be applicable to all persons within the class or coming within the class. If the classification is sought to be made with reference to counties, and the basis of classification is legal, the law must apply to all counties within the class, or which may come within the class. The legislature could not constitutionally classify one county by itself. There must be some reasonable basis of classification, so that all which fall within the class may come within the scope of the provisions of the law. Although the act may purport to make a classification of counties for purposes of legislation, yet if the so-called class is so hedged about and restricted that the act applies to only one county, and that other counties coming within the class provided can not also come within the purview of the law, it is in fact a local or special act and not a general one.' " Reverting to the language of the act of 1933 (Ga. L. 1933, p. 52), "In all counties in this State having a population of not more than 4,350 nor less than 4,340, according to the official census of the United States of 1930 or any future census," how can it be said with any reasonable expectancy that the population of other counties in the State will be not more than 4,350 nor less than 4,340 (a narrow margin of ten) ? As a practical substantial matter such an event, to use the thought expressed in *Worth County* v. *Crisp County,* supra, is too remote to form a basis for a reasonable classification. If small counties other than Towns County have populations approximately near those specified in the act but not within the exact prescribed limits, and these were in the minds of the legislature, their exclusion would tend all the more to show a legis-

lative design to limit application of the act to the one County of Towns, that being the only county shown by the census of 1930 having population within the numbers prescribed. The reference to future census did not supply a reason. It would be a matter of wildest chance if any other county or even the County of Towns would in the next census of 1940 (seven years after the enactment) or any subsequent census have a population exactly within the prescribed limitations. The suggestion of a probability of any such population shown by future census is too flimsy to be considered as contemplated by the constitution inhibiting the passage of special laws for which provision has been made by existing general laws. The act in question (Ga. L. 1933, p. 52), construed as above indicated, is in reality a special enactment within the meaning of the constitution.

The case differs from other cases where the acts in question were made applicable in counties or cities having designated population *or more* and having designated population *or less* without other limitations as to the number of population, which were held to be general laws on the basis of reasonable classifications. Among such cases are *Crovatt* v. *Mason,* 101 *Ga.* 246 (28 S. E. 891); *Cooper* v. *Rollins,* 152 *Ga.* 589 (3) (110 S. E. 726); *Abbott* v. *Commissioners of Fulton County,* 160 *Ga.* 657 (129 S. E. 38); *Jackson* v. *State, Highway Department,* 164 *Ga.* 434 (5) (138 S. E. 847), and cit.; *Wheat* v. *Bainbridge,* 168 *Ga.* 479 (148 S. E. 332). The statutes in these cases were not so framed (as in the instant case) as would practically render the act impossible of application in the future to other counties in the State. The opinions in *Cain* v. *State,* 166 *Ga.* 539 (144 S. E. 6), *Southern Railway Co.* v. *Harrison,* 172 *Ga.* 465 (157 S. E. 462), and *Newport* v. *Longino,* 178 *Ga.* 797 (174 S. E. 537), holding the several statutes in question to be special laws and violative of article 1, section 4, paragraph 1, of the constitution, were put upon grounds other than classification of counties by population.

2-4. The rulings announced in headnotes two to four do not require elaboration.

*Judgment reversed. All the Justices concur.*