LAMONS *et al. v.* YARBROUGH *et al.*

No. 16791. October 11, 1949.

*Dobbs & McCutchen,* and *Marshall L. Allison,* for plaintiffs.

*Spence Grayson,* for persons at interest, not parties.

*Eugene Cook, Attorney-General,* and *J. R. Parham, Assistant Attorney-General,* for defendants.

*Pierre Howard,* for persons at interest, not parties.

HAWKINS, Justice. (After stating the foregoing facts.) ■ All of the grounds of demurrer are not set out for the reason that, under the view we take of this case, the ruling on the general demurrer is controlling. Neither is the entire act here set out, for it is only sections 1, 2, and 3 thereof which are under attack, and which the plaintiffs insist render the entire act unconstitutional and void.

Previous to the passage of the act now under attack, the entire law relating to dental hygienists, their qualifications, examination, etc., was contained in the Code, § 84-1009. It is alleged in the petition that, acting under the authority of this Code section, the Board of Dental Examiners had adopted a rule which provided that, "On and after July 1, 1941, all applicants will be required to be graduates of a duly incorporated and accredited Dental Hygiene School of not less than 9 months' course of instruction to be acceptable for examination. The Dental Hygiene diploma must be presented to the Board at the first session of the examination".

Section 1 of the act now before us quotes the above-mentioned section of the Code, and specifically repeals it in its entirety.

Section 2 of the act, in substance, prohibits any person from practicing as a dental hygienist in Georgia "until such person has passed a written and a clinical examination conducted by the Board of Dental Examiners of Georgia"; prescribes a fee

for the examination, and provides that "The said Board of Dental Examiners shall issue licenses and license certificates as dental hygienists to those persons who have passed said examination in a manner satisfactory to the said Board, which license certificate shall be posted and displayed in the place in which said hygienist is employed."

Section 3 of the act is as follows: "That no person shall be entitled to, or be issued, such license and license certificate as set out in Section 1 of this Act, unless such person shall be at least 19 years of age, of good moral character, and a graduate of a school or college for dental hygienists recognized by the Board of Dental Examiners, which school conducts a course consisting of not less than one academic year for dental hygienists. Provided, however, that this section shall not apply to those persons, bona fide citizens of the State of Georgia, who, at the time of the passage of this Act are actually employed by, or who have within the past two years have been actually employed by, and performing the duties of a dental hygienist for, a licensed dentist, and who have been so employed and performing such duties for a period of two years preceding the passage of this Act, and who, within two years from the passage of this Act, or until such time as a school or college for dental hygienists recognized by the Board of Dental Examiners is established in the State of Georgia, present themselves to the Board of Dental Examiners for a practical examination, and who present to the said Board satisfactory evidence of meeting with the requirements of this proviso."

Section 4 prohibits dental hygienists from engaging in the practice of dentistry, specifies the particular kind of work they may perform; and requires that their work be done only under the supervision of a licensed dentist.

It is insisted by counsel for the plaintiffs that because section 3 of the act provides "That no person shall be entitled to, or be issued, such license and license certificate as set out in section 1 of this act," sections 1 and 3 of the act are "wholly irreconcilable, discriminatory, ambiguous and unenforcible," and are "unintelligible, conflicting, and meaningless." Should such construction be given to the act? It is true that to construe literally that portion of section 3 which refers to section 1

would be to render the act uncertain, ambiguous, and possibly "unintelligible, conflicting, and meaningless." But such a construction of a legislative act is to be avoided if it is at all possible to do so. The cardinal rule for the construction of statutes is to try to ascertain the intent of the legislature. By referring to the law as it existed prior to the passage of the act under consideration, and the rule adopted by the Board of Dental Examiners which limited those who could apply for examination and licensing as dental hygienists to those persons only who were "graduates of a duly incorporated and accredited Dental Hygiene School of not less than 9 months' course of instruction," and requiring the diploma from such school to be presented to the board at the first session of the examination, and then to the provision of section 3 of said act, it is clear that one of the main purposes of the legislature in enacting the present law was to enlarge the class of persons eligible to apply for examination and licensing as dental hygienists, by taking in not only graduates of schools as provided in the first portion of section 3, which conforms to the law and the rule of the board as they previously existed, but also those persons who are specified in the proviso of section 3, viz., "bona fide citizens of the State of Georgia, who, at the time of the passage of this Act are actually employed by, or who have within the past two years have been actually employed by, and performing the duties of a dental hygienist for, a licensed dentist, and who have been so employed and performing such duties for a period of two years preceding the passage of this Act, and who, within two years from the passage of this Act, or until such time as a school or college for dental hygienists recognized by the Board of Dental Examiners is established in the State of Georgia, present themselves to the Board of Dental Examiners for a practical examination, and who present to the said Board satisfactory evidence of meeting with the requirements of this proviso."

It is thus manifest that the reference in section 3 to section "1" of the act is purely a clerical error, and that the reference there is to that section of the act numbered 2, which is the first enacting clause, and not to the section numbered 1, which is a repealing clause of the former law only. To so construe the act would

prevent its nullification and give to it meaning and purpose, and this the court should do, for in *Cairo Banking Co.* v. *Ponder*, 131 *Ga.* 708, 711 (63 S. E. 218), this court recognizes the rule that it is the duty of the court to arrive at the legislative intent, and that, in doing so, it should not adopt an arbitrary rule under which it must be held without variance or shadow of turning that the legislature intended to make a typographical or clerical error, the result of which would be to make nonsense of the act, and not carry out the legislative scheme, but to destroy it. By thus changing the figure "1" as used in section 3 to the figure "2," the meaning of section 3 is clear that the licenses and license certificate provided for under section 2 shall be issued only to those two classes of persons referred to in section 3 and the proviso thereof, viz., graduates of a school or college for dental hygienists as described in the first portion of section 3, and to those bona fide citizens of Georgia who have for two years prior to the passage of the act been employed by and performing the duties of a dental hygienist for a licensed dentist. See also Code, § 102-102 (9) ; *Rabun County* v. *Habersham County*, 79 *Ga.* 248 (5 S. E. 198).

■ ■ It is contended by counsel for the plaintiffs in error that the act under consideration is violative of the equal-protection and due-process clauses of the Federal and State Constitutions, as being discriminatory in that the act requires "college-trained applicants for license to take both a theoretical (written) examination and a practical (clinical) examination; whereas, applicants who had worked in a dentist's office would only be required to take a practical (clinical) examination, without a written theoretical examination." With this contention we do not agree. Section 2 of the act provides: "That no person shall practice as a dental hygienist in the State of Georgia until such person has passed a written and a clinical examination conducted by the Board of Dental Examiners of Georgia," and that said board "shall issue licenses and license certificates as dental hygienists to those persons who have passed said examination in a manner satisfactory to the said Board." The proviso of section 3 of the act requires that the applicants under the terms thereof shall present themselves to the Board of Dental Examiners "for a practical examination,"

and shall present to the board satisfactory evidence of meeting the other requirements of the proviso. Counsel insist that the term "written examination," should be held to mean only a theoretical examination, and that the term "clinical examination" is synonymous with and means only a "practical examination." This appears to be a strained construction of the act. Section 2 is plain and unequivocal that no person shall practice as a dental hygienist in this State until such person has passed "a written and a clinical examination" in a manner satisfactory to the board. The requirements of the proviso of section 3, that applicants thereunder shall present themselves to the board for "a practical examination," do not undertake directly or indirectly to modify or limit the requirements that all applicants shall pass a written and a clinical examination. The word "practical" is defined by Webster as "capable of applying knowledge or theory to practice." A practical examination would thus cover both theory and practice, and comprehend both a theoretical and clinical examination, and section 2 requires all examinations to be written and clinical. As thus construed, the act is not violative of the equal-protection clauses of the State and Federal Constitutions as requiring one kind of examination for one class of applicants and a different kind of examination for another class, and it does not discriminate against either class of applicants, but applies equally to all. *Hughes* v. *State Board of Medical Examiners*, 162 *Ga*. 246 (134 S. E. 42). The act deprives none of the plaintiffs of any right or property without due process of law. In *Cooper* v. *Rollins*, 152 *Ga*. 588 (110 S. E. 726, 20 A. L. R. 1105), this court recognizes the right of the legislature, in the exercise of the police power of the State, to determine what trades or occupations shall be regulated and the nature and extent of the regulations to be applied, and there held: "If it [the law] operates alike on all who come within the scope of its provisions, constitutional uniformity is secured." It was also held in that case: "This court will not declare an act of the legislature unconstitutional, unless the conflict between the act and the Constitution is clear and palpable." While under the Constitution the judiciary has the power and duty of declaring void legislative acts in violation of the Constitution of this State and of the United States, the conflict between the act and the fundamental law must be clear

and palpable before an act of a co-ordinate department of the government will be declared unconstitutional. *Wellborn* v. *Estes,* 70 *Ga.* 390 (1); *Cutts & Johnson* v. *Hardee,* 38 *Ga.* 350, 355; *Carey* v. *Giles,* 9 *Ga.* 253 (4), (5). In *Winter* v. *Jones,* 10 *Ga.* 190 (7) (54 Am. D. 379), it is said: "It is the duty of courts, to put such a construction upon statutes, if possible, as to uphold them and carry them into effect." What we here hold is not in conflict with the rulings made in *Gregory* v. *Quarles,* 172 *Ga.* 45 (157 S. E. 306), and *Southeastern Electric Co.* v. *Atlanta,* 179 *Ga.* 514, 518 (176 S. E. 400), for in each of those cases one class of persons was exempted from examination, and another class performing the same kind of work was required to stand an examination.

■ Nor is the act here under consideration violative of article 3, section 7, paragraph 8 of the Constitution of Georgia (Code, Ann., § 2-1908), providing that "No law shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof," as contended by the plaintiffs, "in that the title in part reads, 'to provide for the licensing of dental hygienists; to provide for examination of applicants for such licensing; to provide for the qualifications of applicants,' although the body of the act attempts to do the opposite of the things stated in the quoted portion of said title." If this attack be sufficiently definite to raise any question for determination by this court (*Emerson* v. *Southwest Georgia Regional Housing Authority,* 196 *Ga.* 675, 27 S. E. 2d, 334; *Stegall* v. *Southwest Georgia Regional Housing Authority,* 197 *Ga.* 571, 582, 30 S. E. 2d, 196; *Dade County* v. *State of Georgia,* 201 *Ga.* 241, 245, 39 S. E. 2d, 473), a mere reading of the act will demonstrate its lack of merit. The body of the act in section 2 does provide for the licensing of dental hygienists, and for examination of applicants for such license, and by section 3 provides the qualifications of applicants.

■ Under the foregoing rulings, the act under consideration was not subject to the attacks made thereon, and the petition as amended failed to state a cause of action. The trial court did not err in sustaining the general demurrer and in dismissing the petition and restraining order previously granted.

*Judgment affirmed. All the Justices concur.*