BARGE *et al.* *v.* CAMP *et al.*

No. 17801. ARGUED MARCH 11, 1952—DECIDED APRIL 16, 1952.

*Daniel Duke* and *Marvin O'Neal Jr.,* for plaintiffs.

*J. C. Savage, J. C. Murphy, J. M. B. Bloodworth, John E. Feagin, Henry L. Bowden, Harold Sheats, Durwood T. Pye, E. A. Wright* and *Standish Thompson,* for defendants.

HAWKINS, Justice. (After stating the foregoing facts.) ■ The contention of the defendants in error that the plaintiffs have no right to maintain the present action is without merit. While no person will be heard to question the constitutionality of a statute except as it may infringe upon his personal or property rights, and an injunction will not be granted on mere apprehension, and a party suing as a taxpayer, in order to obtain such relief, must show that he is in danger of injury through loss of public funds or property (*Wallace* v. *City of Atlanta,* 200 *Ga.* 749, 38 S. E. 2d, 596)—a citizen and taxpayer of a county or municipality has a pecuniary interest in the sum made up from taxes, and this interest will authorize him to seek to prevent an illegal diversion of tax money or property. This court has many times held that citizens and taxpayers of both counties and municipalities have such interest as will authorize them to maintain actions to enjoin the unlawful disposition of public funds or property. *Morris* v. *City Council of Augusta,* 201 *Ga.* 666, 669 (40 S. E. 2d, 710).

■ "While, under the Constitution, the judiciary has the power and duty to declare void legislative acts in violation of the Constitution of this State or of the United States, the conflict between the act and the fundamental laws must be clear and palpable before the act of the coordinate department of the government will be declared unconstitutional. It is the duty of courts to put such construction upon statutes, if possible, as to uphold them and carry them into effect." *Lamons* v. *Yarbrough,* 206 *Ga.* 50 (2) (55 S. E. 2d, 551, 11 A. L. R. 2d, 717). See also *Stegall* v. *Southwest Georgia Regional Housing Authority,* 197 *Ga.* 571 (30 S. E. 2d, 196). Keeping this in mind, is the act here involved subject to the various constitutional attacks made upon it? It is first insisted that the entire act is so hedged about and restricted that the possibility of other counties and municipalities ever being able to come within the classes defined therein is so remote and improbable that it excludes every municipality but Atlanta and could only apply to Fulton County, and is,

therefore, a special law in contravention of article 1, section 4, paragraph 1 (Code, Ann., § 2-401) of the Constitution of 1945. In *Murphy* v. *West,* 205 *Ga.* 116 (1) (52 S. E. 2d, 600), it is said: "The General Assembly may make classification for the purposes of legislation and may enact general laws with reference to such classes. Where the basis of classification is that of population, in order to be a general law it is necessary that such classification shall be open to let in any county or city which by any future census might have the stipulated population." The act here under attack provides that it shall apply "in all counties of the State of Georgia in which there is located all or the greater part (of population) of a city or municipality with a population of 300,000 or more, according to the U. S. census of 1950 or any future U. S. census"; and by subparagraph (a) of section 9 of the act provision is made for the time when the act shall become effective in the counties to which it now applies, and in any county to which it may apply under any future census, thus by express terms being open to let in any county or city which by any future census might have the stipulated population. Thus it is an act relating to counties of a certain class, general in its terms, and founded upon a proper and legitimate basis of classification, and is general, and not special, legislation, though but a single county may now be embraced within the class affected by it. *Abbott* v. *Commissioners of Fulton County,* 160 *Ga.* 657, 663 (129 S. E. 38). This act differs from those dealt with in *Gibson* v. *Hood,* 185 *Ga.* 426 (195 S. E. 444); *Christian* v. *Moreland,* 203 *Ga.* 20 (45 S. E. 2d, 201); *Hasty* v. *Hamrick,* 205 *Ga.* 84 (52 S. E. 2d, 470); *Calhoun County* v. *Early County,* 205 *Ga.* 169 (52 S. E. 2d, 854), and other like cases, for the reason that in those acts the population classification was closed at both ends, within such a narrow range, and so hedged about that the possibility of other counties having such populations by any subsequent census was too remote to form a basis for a reasonable classification. Nor is the act void because in conflict with the general law providing for county police (Code, Chapter 23-14), for it is an amendment of this general law, and a general law may be repealed or modified by another general law. *Stewart* v. *Anderson,* 140 *Ga.* 31 (78 S. E. 457).

Nor is the act violative of or repugnant to article 11, section 1,

paragraph 7 of the Constitution (Code, Ann., § 2-7807), dealing with the consolidation of county and municipal governments, or article 15, section 1, paragraph 1 (Code, Ann., § 2-8301), the home rule provision of the Constitution, dealing with the right of the General Assembly to provide uniform systems of county and municipal governments and for optional plans of both. The act does not undertake or purport to consolidate the county and municipal governments of Fulton County and the City of Atlanta, or to deal with the systems of government of either. Neither is it in conflict with the County Purchasing Department Act of 1941 (Ga. L. 1941, p. 408), or with Code § 91-804 with respect to the manner of disposing of county property. The transaction here under consideration does not come within the terms of either of those general laws.

It seems to us that a complete answer to all of the attacks made upon this act is to be found in article 7, section 6, paragraph 1 of the Constitution of 1945 (Code, Ann., § 2-5901), which provides: "(a) . . any . . municipality or county of this State may contract for any period not exceeding fifty years, with each other . . for the use by such subdivisions or the residents thereof of any facilities or services of the . . municipality [or] county . . provided such contracts shall deal with such activities and transactions as such subdivisions are by law authorized to undertake." Subparagraph (b) is as follows: "Any city, town, municipality or county of this State is empowered, in connection with any contracts authorized, by the preceding paragraph, to convey to any public agency, public corporation or authority now or hereafter created, existing facilities operated by such city, town, municipality or county for the benefit of residents of such subdivisions, provided the land, buildings and equipment so conveyed shall not be mortgaged or pledged to secure obligations of any such public agency, public corporation or authority and provided such facilities are to be maintained and operated by such public agency, public corporation or authority for the same purposes for which such facilities were operated by such city, town, municipality or county. Nothing in this section shall restrict the pledging of revenues of such facilities by any public agency, public corporation or authority." Certainly both the county and the City of Atlanta

are authorized to furnish police protection and services, for in *Henderson* v. *Heyward*, 109 *Ga.* 373, 376 (34 S .E. 590, 47 L. R. A. 366, 77 Am. St. R. 384), it is said: "The police power of a State may be exercised by the General Assembly directly, or indirectly through the medium of the subordinate public corporations of the State." See also *Shaver* v. *Martin*, 166 *Ga.* 424, 425 (143 S. E. 402).

The proposed contract between the county and the city, copy of which is attached to the petition, provides that all equipment transferred by the county to the city shall be accepted and used by the city "in the performance of the terms and conditions and in furnishing the services contemplated herein," which is the policing of the unincorporated areas of Fulton County, the same purposes for which such equipment or facilities had previously been used. This answers the contention of the plaintiffs that 40,000 residents of the City of Atlanta who reside in DeKalb County will receive the benefit of this equipment. Under the terms of the contract and the provisions of the Constitution above referred to, these facilities and this equipment are not to be used for the benefit of the City of Atlanta or its residents, but for the benefit of the unincorporated areas of Fulton County, in which the plaintiffs reside. The act here attacked and the contract which it authorizes between the county and the city are specifically authorized under the constitutional provisions above quoted, and are both in strict compliance therewith. Therefore, the plaintiffs are not being deprived of equal protection of the law or of their rights and property without due process of law in violation of the State and Federal Constitutions.

Counsel for the plaintiffs argue most strenuously that to permit such a contract between counties and municipalities has a tendency to destroy local self-government by the county and to centralize governmental powers in the city; that the law is contrary to public policy, is unwise, and contrary to the inherent and inalienable rights of the plaintiffs to have a voice in the selection of the officers who will pass upon the qualifications and employ the police officers to furnish police protection in the unincorporated areas of Fulton County in which they reside. This court in *Plumb* v. *Christie*, 103 *Ga.* 686, 692 (30 S. E. 759, 42 L. R. A. 181), has said: "It is idle, in a court of law created for the pur-

pose of declaring legal principles or passing upon legal rights of litigants at issue, to discuss 'inherent and inalienable rights', supposed to exist in the enlightened conscience or consciousness of mankind, yet undefined by any rule known to the organic or statute laws of a State. In discussing the validity of an act passed by the legislative branch of the government, no light can be gathered by an attempt to show that it contravenes the general purposes for which a free government is established. In all independent States and nations absolute power rests somewhere. In this country it is neither lodged with the executive nor the legislative nor the judicial branches of the government, nor with all combined; but sovereignty rests with the people of the several States. The ultimate source of legislative power is traceable to them; and in their sovereign capacity they have a right to frame laws for their own government, and for the regulation of human conduct on all matters over which exclusive power has not by them been delegated to the Federal government. Acting in their organized capacity, and under the forms of existing laws, they can rend asunder all bonds that are thrown as restraint around individual action, unbridle liberty, and make license as free as the winds of heaven, and as wild as the waves of the sea. They can, on the other hand, so frame their organic and statute law as to place upon their own necks a yoke as galling as ever serf carried under the edict of a despot. It is eminently in this sense that we live under a free government, which simply means a government created by the people, and which they are absolutely free to change or modify at their pleasure. It is worse than useless then for the courts to undertake to pass upon the validity of a statute by an inquiry as to whether or not it is just or oppressive. To enter into such a field of investigation would be like embarking upon the sea without rudder or compass. A law is not necessarily unconstitutional or otherwise invalid because it is unjust. We live under a constitutional government, and written laws; and the courts can enforce only such rights as they protect, and remedy such wrongs as they redress." This court has also held: "The criticism of a statute duly enacted by the legislature of this State, upon the ground that it is void because contrary to public policy, is without merit." *Lott* v.

*Board of Education of Hall County,* 164 *Ga.* 863 (1) (139 S. E. 722).

The people of this State, the sovereign power, have spoken in the adoption of the Constitution of 1945, article 7, section 6, paragraph 1 (Code, Ann., § 2-5901), which specifically authorizes both the act here attacked and the contract which is proposed to be entered into between the County of Fulton and the City of Atlanta under the terms thereof. By that supreme law both the plaintiffs and this court are bound. *Wheeler* v. *Board of Trustees of Fargo Consolidated School District,* 200 *Ga.* 323 (37 S. E. 2d, 322).

What we have here held is not in conflict with the rulings of this court in *Levine* v. *Perry,* 204 *Ga.* 323 (49 S. E. 2d, 820). While it was there held that the County Commissioners of Glynn County could not delegate to the police commission there referred to the powers conferred upon the county commissioners to select, maintain, and operate a county police force, the police commission there involved, and to whom the powers referred to were to be delegated, was not such a governmental subdivision, municipality, or public authority as is referred to in article 7, section 6, paragraph 1 (Code, Ann., § 2-5901) of the Constitution, but was a creature or agent of the county commission, and therein lies the distinction between that case and this.

The petition failed to state a cause of action, and the trial court did not err in sustaining the general demurrers thereto.

*Judgment affirmed. All the Justices concur. Wyatt, J., concurs specially.*

WYATT, Justice, concurring specially. I concur in the judgment for the reason that I am bound by former full-bench decisions of this court. It is my opinion that the classification based on population in this case, as well as the former decisions of this court on that question, are all wrong and should be overruled; but the court as now constituted is not willing to overrule the cases on this question.