**Formation of Regional Narcotics Task Force By Sheriff**

CREAMER, Attorney General, November 10, 1972.

—You have requested an opinion on whether a Regional Narcotics Task Force proposed by the Sheriff of Allegheny County is lawful.

As explained to me, the purpose of the contemplated task force is to combat illegal drug trade in Allegheny County and the various municipalities within it by means of unifying under the command of the sheriff certain law enforcement officers from the county and from the municipalities within the county. Policy and coordination would be established by a board of directors composed of county and local law enforcement officers.

You are advised that the contemplated task force is lawful and that the Governor's Justice Commission may entertain the sheriff's application for a grant-in-aid to help finance the creation and operation of said task force.

"The Congress [of the United States has made] the following findings:

"(1) Drug abuse is rapidly increasing in the United States and now afflicts urban, suburban, and rural areas of the Nation.

"(2) Drug abuse seriously impairs individual, as well as societal, health and well-being.

"(3) Drug abuse, especially heroin addiction, substantially contributes to crime.

"(4) The adverse impact of drug abuse inflicts increasing pain and hardship on individuals, families, and communities and undermines our institutions.

"(5) Too little is known about drug abuse, especially the causes, and ways to treat and prevent drug abuse.

"(6) The success of Federal drug abuse programs and activities requires a recognition that education, treatment, rehabilitation, research, training, and law enforcement efforts are interrelated.

"(7) The effectiveness of efforts by State and local governments and by the Federal Government to control and treat drug abuse in the United States has been hampered by a lack of coordination among the States, between States and localities, and throughout the Federal establishment.

"(8) Control of drug abuse requires the development of a comprehensive, coordinated long-term Federal strategy that encompasses both effective law enforcement against illegal drug traffic and effective health programs to rehabilitate victims of drug abuse.

"(9) The increasing rate of drug abuse constitutes a serious and continuing threat to national health and welfare, requiring an immediate and effective response on the part of the Federal Government": Drug Abuse Office and Treatment Act, 21 U.S.C. §1101 (1972).

The policy of this Federal act is national in scope and the Commonwealth and its political subdivisions are obliged to marshal their resources in order to halt the illegal drug trade which is eroding the well-being, peace and tranquillity of our society.

The sheriff is the chief peace officer of Allegheny County: Charge to Grand Jury of Venango County, 23 Pa. C. C. 667 (1900); Commonwealth v. Martin, 7 Dist. R. 219, 9 Kulp 69 (1898). Vested in him is the power to

preserve the peace, quell disorders and suppress riots: Commonwealth v. Martin, 7 Dist. R., at page 224. As the chief peace officer of that county, it is reasonable and necessary that he marshall manpower resources to his command to end this clear and present danger to the people of his bailiwick.

The traditional method, at common law, for the sheriff to command adequate physical force to keep the peace is the posse comitatus. See Sadler, Criminal Procedure in Pennsylvania, 2d Ed., §94, pages 106-108. However, the Supreme Court of Pennsylvania has recognized that the sheriff is not limited to use of a posse comitatus to keep the peace; but where he deems appropriate, may adopt all those physical and moral means which may be adapted to the occasion, whether pointed out by the the law or not: McCandless v. Allegheny Bessemer Steel Co., 152 Pa. 139, 148 (1893). See also Clark v. Cook, 14 Pa. Superior Ct. 309 (1900), affirmed in 197 Pa. 643 (1901).

In the McCandless case, the Sheriff of Allegheny County was informed by the proprietors of the Bessemer Steel works at Duquesne that a strike at that plant had resulted in considerable disorder and there were threats of violence. They requested him to protect their property and preserve the peace. The court found that a contract was entered into between these parties and the sheriff whereby the sheriff employed and armed special deputies and placed them in charge of the property. It is significant that these special deputies were not approved by the Salary Board of Allegheny County. Nevertheless, the Supreme Court of this Commonwealth held that this contract by the sheriff was lawful and that defendant company was obligated to repay to the sheriff the money which he actually expended in paying the per diem wages and costs of subsistence of the special deputies which he selected.

We note in your request for an opinion, that the County Solicitor particularly objects to the use on the Task Force of local police from cities, boroughs and townships within the county. In light of the policy of the Drug Abuse Office and Treatment Act, supra, the presence of these men on the Task Force seems desirable, in order to coordinate the county and municipal efforts. The use by a sheriff of such forces to keep the peace is not without precedent. In Carter Curtis, Sheriff v. The County of Allegheny, 1 Phila. 237 (1851), the sheriff of that county during a riot employed a militia to assist him. The holding of that case is relevant because, although ruling that such method was not specifically authorized by statute, nonetheless, such means to keep the peace was lawful. However, because such means were not specifically authorized by statute, the sheriff and not the county was obligated to pay the expense of employing said militia.

As we understand the proposal for creation of the Task Force, the county will not be paying the salaries of the municipal officers who will be acting as special deputies of the sheriff. Funds for their salaries will be coming from the various municipalities who employ these officers and who benefit by this cooperative effort, and from the contemplated grant by the Governor's Justice Commission.

We should also point out that the Governor recently signed into law a new intergovernmental cooperation act. Act 180 of July 12, 1972, 53 PS §481, et seq. (See 53 PS §471, et seq., for the old act which has been completely repealed.) Section 3 of the new act, 53 PS §483, states:

"Two or more municipalities in this Commonwealth may jointly cooperate . . . in the exercise or in the performance of their respective governmental functions, powers or responsibilities. For the purpose of

carrying the provisions of this act into effect the municipalities cooperating shall enter into such joint agreements as may be deemed necessary for such purposes."

The definition of "municipality" in section 1 of the new act, 53 PS §481, includes "counties."

Control of illegal trafficking in controlled substances is a responsibility common to both the County of Allegheny and those cities, boroughs and townships within said county. As such, it is a proper subject of intergovernmental cooperation. Cooperation in, or consolidation of, law enforcement activities is not without legal precedent. In the case of Barge v. Camp, 209 Ga. 38, 70 S.E. 2d 360 (1952), a contract between the City of Atlanta and the County of Fulton providing for the city to assume law enforcement services in unincorporated areas of the county was sustained by the Supreme Court of Georgia.

We also note that the county solicitor has raised concerns as to how these local officers serving on the task force would be affected by statutes pertaining to the county on such matters as workman's compensation, retirement and arbitration. With one exception, they need not be affected. In drafting the intermunicipal cooperation agreement the signatories can provide that these local officers will remain employes of their respective municipalities and that said officers are being loaned on a detached-service basis to the sheriff. (See section 3 of Act 180, supra.) They would, therefore, continue under the retirement program of their own municipalities and matters such as wages would be subject to the laws, ordinances and regulations applying to those local governments.

The one exception is workman's compensation. The case of Doyle v. Commonwealth, 153 Pa. Superior Ct. 611, 34 A. 2d 812 (1943), holds that where a municipality loans an employe to another political

entity (in that case, the Pennsylvania Department of Highways), that political entity which at the time of the injury exercised control and direction over the worker is responsible for any claim for compensation under the Workman's Compensation Act. Since these local officers, while assigned to the Task Force, would be under the command of the sheriff; therefore, said officers would, as a result, be subject to the insurance covering the sheriff and his employes. This arrangement might cause a change in the rate of insurance to the county. However, that could be satisfied by providing in the intergovernmental cooperation agreement for indemnification or reimbursement by the local governments or their insurers for any changes in such rates.